Stanley V. ROBERTSON, Petitioner,

v.

Dale C. CAMERON, Respondent.

No. 176–63.

United States District Court
District of Columbia.

Nov. 20, 1963.

Samuel I. Sherwood, Washington, D. C., for petitioner.

Oscar Altshuler, Asst. U. S. Atty., for respondent.

HOLTZOFF, District Judge.

On February 1, 1960, the petitioner, Stanley V. Robertson, threw a brick through a drugstore window, reached for some of the contents of the store and stole seven watches which he was able to grab through the opening. He was indicted on charges of housebreaking and larceny, and was found not guilty on the ground of insanity on April 12, 1961. As is required by the mandatory provisions of the local statute, he was forthwith committed to Saint Elizabeths Hospital for the mentally ill, D.C.Code, Section 24–301(c). He has filed a petition before this Court for a writ of habeas corpus, alleging that he has recovered his sanity and that the Superintendent of Saint Elizabeths Hospital, in refusing to certify and recommend him for release, is acting arbitrarily and capriciously. A writ was issued, a return filed and testimony has been taken at length.

In connection with the hearing on the writ, the Court caused the petitioner to be examined by the Legal Psychiatric Service of this Court and later referred the matter for an advisory opinion to the Commission on Mental Health of this Court. The reports of these various examinations, as well as the oral testimony of the psychiatrists who conducted them, are before the Court.

 Before discussing the testimony it seems desirable to recapitulate the principles of law that must govern this Court in disposing of a case such as this. As heretofore stated, the District of Columbia Code, Section 24–301(c), provides that whenever a person charged with a criminal offense is acquitted solely on the ground that he was insane at the time of its commission, that fact should be set forth by the jury in their verdict; and subsection (d) prescribes that in such an event the Court should order such person to be confined in a hospital for the mentally ill. It is further provided in subsection (e) that if the Superintendent of the Hospital thereafter certifies that such person has recovered his sanity, that in the opinion of the Superintendent such person will not in the reasonable future be dangerous to himself or others, and that in the opinion of the Superintendent the person is entitled to his unconditional release, such certificate shall authorize the Court to order the unconditional release of the person; but that the Court may hold a hearing, on the basis of the certificate, at which evidence as to the mental condition of the person may be submitted. It is further provided that if the Court finds that such per-

son has recovered his sanity and will not in the reasonable future be dangerous to himself or to others, the Court shall order such person unconditionally released. There are also provisions for a conditional release, under supervision, on the recommendation of the Superintendent of the Hospital. To summarize these provisions, a person who has been found not guilty of a criminal offense on the ground of insanity may not be released unless the Superintendent of the Hospital certifies that he has recovered his sanity and that in the Superintendent's opinion such person will not in the reasonable future be dangerous to himself or others and that the person is entitled to an unconditional release. However, the Superintendent, in determining whether to make or refuse to make such a certificate, does not have uncontrolled and unbridled discretion. There is no room in our governmental institutions for any official with an unbridled or uncontrolled discretion. The discretion of the Superintendent in failing to certify such an inmate for release is subject to judicial review if it is claimed to be arbitrary or capricious.

By arbitrary or capricious is not meant that the refusal must be in bad faith. These words are not used in their popular opprobrious significance. They are words of art and they mean merely that there must be a reasonable or rational basis for the action of the Superintendent.[1] The Superintendent may not act according to his personal notion or whim, no matter how well intentioned or bona fide his action may be. The Court of Appeals has held this to be the law, and the fact that Congress so intended is emphasized by subsection (g) of Section 24–301, which provides that nothing contained in the Act shall preclude the person confined from establishing his eligibility for release by a writ of habeas corpus. This perhaps is surplusage because the right to a writ of habeas corpus is a constitutional right, but it has a place in the statute for the purposes of emphasis.

The burden of proof is, however, on the petitioner. In order to sustain his burden of proof he must show by a preponderance of evidence, first, that he has recovered his sanity; second, that he will not in the reasonable future be dangerous to himself or others by reason of any mental disease or mental defect; and, finally, that the failure or refusal of the Superintendent of the Hospital to certify him for release is arbitrary or capricious, in the legal significance of that term.[2]

This brings the Court to a consideration of the evidence in order to determine whether the petitioner has sustained this burden. The respondent's return to the order to show cause why a writ should not issue alleged, among other things, that the petitioner had been admitted to Saint Elizabeths Hospital on April 12, 1961, after having been found not guilty by reason of insanity on charges of housebreaking and larceny. It is further averred that the petitioner has not recovered from his abnormal mental condition, which was diagnosed to be "anti-social reaction with psychotic reaction". At common law the return to a writ of habeas corpus, insofar as it contained statements of facts, had to be traversed, and unless a traverse was filed the allegations of the return were considered as admitted. Traverses have fallen into disuse and they are no longer employed in this District. Consequently the allegations of fact contained in the return will be deemed denied, except those that are matters of record in the files of this Court. This procedure is parallel to that under the Federal Rules of Civil Procedure which no longer require a reply to an affirmative defense.

1. Dell Publishing Co. v. Summerfield, D.C., 198 F.Supp. 843, aff. Dell Publishing Co. v. Day, 113 U.S.App.D.C. 1, 303 F.2d 766; O'Boyle v. Coe, D.C., 155 F.Supp. 581, 584.

2. Overholser v. Leach, 103 U.S.App.D.C. 289, 291, 257 F.2d 667, 669; Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 314, 281 F.2d 943, 949; Foller v. Overholser, 110 U.S.App.D.C. 239, 241, 292 F.2d 732, 734.

A great deal of testimony was introduced by both sides and the matter has been thoroughly explored. Both Government counsel and counsel for the petitioner have represented their respective positions very ably. The Court wishes to thank Mr. Samuel I. Sherwood, a member of this Bar, who was assigned to act as counsel for the petitioner and who has performed the public service that he was asked to undertake without compensation in the best traditions of the Bar.

A junior psychiatrist on the staff of Saint Elizabeths Hospital was called as a witness. Probably to the surprise of Government counsel, and certainly to the surprise of the Court, he repudiated the diagnosis contained in the return and testified that in his opinion the petitioner was suffering from a chronic undifferentiated type of schizophrenia. No testimony whatever was offered to support the diagnosis contained in the return. That in itself, standing alone, is somewhat unreasonable. The psychiatrist who was apparently assigned by Saint Elizabeths Hospital to give testimony in this matter, in addition to giving his diagnosis, referred to the fact that the petitioner escaped from the Hospital in May 1962, was gone about seven months, and was apprehended and returned in January 1963. On being further interrogated, the psychiatrist testified that in recent months the petitioner had not displayed any overt symptoms of his mental disorder. To use the witness' words, "He has gone into remission and is in partial remission now." The witness further admitted that the petitioner's most recent flare-up was in 1962. Consequently, for almost a year or more the petitioner, according to the psychiatrist of Saint Elizabeths Hospital, had not displayed any symptoms of a mental disease. He has had no hallucinations or delusions, for example.

The witness, however, expressed the opinion, without giving any basis for it, that if the petitioner were released his illness would flare up again and he might become "assaultive"—meaning that he might assault other persons—and that he might turn on his alleged persecutors. This is negatived by the actual fact that during the seven months when the petitioner was away from the Hospital due to an escape he seemed to get along, earn his own living in a modest way and not get into any serious trouble.

The Court realizes that there seems to be a view that an escape from a mental hospital is in itself a symptom of a mental disorder. The Court emphatically disagrees. The fact that a person escapes from confinement is not a sign of insanity. One might perhaps refer to the celebrated Egan case [3] in which the patient who had been committed to the hospital erroneously, escaped in order to hire an outside psychiatrist to prove his sanity.

The Court, as heretofore stated, referred the petitioner to the Legal Psychiatric Services of this Court for an impartial examination. Dr. Lanham of that Service filed a report and gave oral testimony. In his report he stated:

> "It is my opinion that the said Stanley Robertson continues to suffer from a mental disorder, i. e., sociopathic personality disturbance, anti-social reaction. Although he no longer exhibits psychotic symptoms while in the hospital, in my opinion he would be dangerous to himself and others if given an outright release at this time."

In his oral testimony Dr. Lanham repeated this diagnosis and stated that it was at variance with the official diagnosis of Saint Elizabeths Hospital. He also testified that the petitioner no longer exhibits any symptoms of a mental disorder and that during the seven months during which he was at liberty by reason of his escape, the petitioner did not commit any serious crime while roaming around the country until he was finally apprehended in Lincoln, Nebraska.

Thus both the psychiatrist from Saint Elizabeths Hospital, Dr. Dabney, and Dr.

---

3. Egan v. United States, D.C., 158 F.Supp. 377.

Lanham of the Legal Psychiatric Services, agreed that at the present time the petitioner does not display any signs of any mental disorder and that he was able to get along for a period of seven months without getting into serious trouble. Dr. Lanham indicated that one reason why in his opinion the petitioner does not show any symptoms of a mental disease at this time is that he is subject to the regulated discipline of an institution, and said that if the petitioner were completely free his symptoms would break out again. He gave no basis for that conclusion, however, and it is refuted by the fact that the petitioner was able to get along without getting into serious trouble during seven months of liberty.

The petitioner testified in his own behalf. In accordance with its usual practice in such matters, the Court allowed the petitioner to testify at great length. Frequently when a petitioner for a writ of habeas corpus in such a case is permitted to give detailed oral evidence, he will eventually say something that will show that he is abnormal. Nothing of this sort happened here. The petitioner testified, among other things, that after he escaped from the Hospital he wanted to get away because he thought that he might be apprehended. He went to Baltimore, where he stayed a few days and immediately was able to get a job, apparently through the United States Employment Service. After a few days he went to Philadelphia, where again he was able to get a job. He traveled from city to city until he reached the West Coast and then retraced his steps to Lincoln, Nebraska. In each place he was able to secure employment without any difficulty or delay through the United States Employment Service. To be sure, these jobs were of a humble type. This petitioner, however, like millions of others apparently comes from a humble milieu and has always traveled through the paltry rivulets of life without ever entering a mainstream.

The fact that he roamed around the country is not a sign of an unbalanced mind. The social history of the United States shows that there were periods when there were thousands of tramps and hobos, as well as honest workingmen, wandering over the country. We have all read and heard of the roving printer who works for a short time in one place and then moves on.

Thus there is the fact, first, that the defendant while on the witness stand for a long time did not display any mental aberration. This fact in itself is not conclusive because there are mentally diseased persons who are able to control themselves for a considerable period of time and carry on a normal conversation for an hour or more. It is, however, some evidence. The additional circumstance that he was able to secure employment in various places through the United States Employment Service and hold his jobs as long as he wanted, without apparently impressing anyone as being of unsound mind, is of important significance. The Court asked him how he financed his living expenses and his answer was that if he had more than five dollars he would go to a hotel, but that if he had less than five dollars he would sleep at a Mission. There was nothing insane about that.

To go back to Dr. Lanham's testimony, Dr. Lanham expressed the opinion—and the Court has a high regard for him—that the petitioner was suffering from a sociopathic personality disturbance. Until recent years persons who are now known as sociopaths were called psychopaths. They were not regarded as mentally ill; they were not subject to commitment in a civil proceeding; and they could not be acquitted of a criminal offense on the ground of insanity unless indeed the psychopathic personality was accompanied by other complications. It is a well known fact, and it was corroborated by the last witness called, that at the present time there are some psychiatrists who regard a sociopathic personality as a mental disease and that the psychiatric profession is split, one group looking upon sociopathic personality as a mental disease and the other group ad-

hering to the negative position. This is a very unfortunate situation because the rights of a defendant to be acquitted on the ground of insanity would, under these circumstances, depend on the psychiatrist who happens to testify.

It so happens that several years ago Saint Elizabeths Hospital almost overnight announced a change of position, stating that while previously members of its staff had classified sociopathic personalities as not being mentally diseased, they were reversing their position and would thereafter classify them as being mentally diseased. It may be said in passing that this is one of the matters that created a complication in the application of the Durham rule [Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430], which had been enunciated by the Court of Appeals prior to this change of position on the part of Saint Elizabeths Hospital.

It is interesting to note that the American Law Institute in its Model Penal Code proposed a provision expressly indicating that a person known as a sociopathic personality should not be regarded as mentally ill for the purpose of an acquittal on the ground of insanity. This is found in Article 4, Section 4.01, subsection 2, of the Model Penal Code.

The Court at this stage of the proceeding was not entirely satisfied one way or the other and on its own initiative requested an examination and advisory opinion by the Commission on Mental Health. This Commission composed of two psychiatrists and a lawyer Chairman, filed a report, the pertinent portions of which read as follows:

> "It is our opinion, after examining Mr. Stanley V. Robertson, that he is no longer suffering from any mental disease or defect that would render him dangerous to himself or others at this time or within the foreseeable future. It is our opinion that his diagnosis is anti-social reaction with a history of psychotic reaction, from which he is now recovered."

One of the two physician members of the Commission, Dr. Keeney, was called as a witness by the Government. He explained this opinion by stating that it may be that the petitioner may have suffered from an anti-social reaction with psychotic reaction, but that he is not now so suffering and that he is at this time a normal individual. Dr. Keeney also testified in response to a question that the mere fact that a person is a sociopathic personality is not in and of itself sufficient to justify a commitment to a mental institution in a civil proceeding. Thus we have a rather anomalous situation of a sociopath not being subject to commitment civilly and yet being able to secure his acquittal on the ground of insanity if prosecuted on a criminal charge. It also must be borne in mind that a sociopathic personality is generally not regarded as curable and a person in that position might find himself imprisoned for life in a mental institution. Surely we cannot use commitments to mental institutions to serve in the place of habitual criminal laws, which we do not have in this jurisdiction, but which are found in some of the States.

To summarize, there is not a scintilla of evidence that the petitioner is at this time suffering from a mental disease or defect or exhibiting any abnormal symptoms. He has shown by the manner in which he managed to get along during the seven months when he was at liberty, that he is able to take care of himself without getting into serious trouble. Even though he might possibly commit other crimes, this circumstance in itself is no reason to confine him in a mental institution if he has no symptoms of a mental disease. The two physician members of the Commission on Mental Health are unequivocal in their report. Dr. Dabney and Dr. Lanham, to be sure, prognosticate that, if released, his symptoms might recur, but that is a very dangerous basis on which to deprive a person of his liberty, the most precious right that is accorded to an individual.

■■ Accordingly, the Court finds as a fact that the petitioner has recovered his sanity and is not likely in the reasonably foreseeable future to be dangerous

to himself or others by reason of any mental disease or mental defect, because he has none. The Court further finds that the refusal of the Superintendent of Saint Elizabeths Hospital to make a certificate on the basis of which the petitioner may be released is arbitrary and capricious, using those terms in their technical legal sense, because the Court wishes to say that it has no doubt as to the good faith and the competency of the staff of Saint Elizabeths Hospital. These findings are supported by a preponderance of the evidence.

Accordingly, the petitioner is entitled to his release and the writ will be sustained.

We now reach the question as to what form the final order of this Court should take. The statute governing writs of habeas corpus, 28 U.S.C. § 2243, provides that:

> "The Court shall summarily hear and determine the facts and dispose of the matter as law and justice require."

In other words, the Court has wide discretion as to the final disposition of the case. The Court is of the opinion that it has authority under that statute to grant either an unconditional or conditional release. The situation is entirely different from that presented when an unconditional release is recommended by the hospital. In a habeas corpus proceeding the authority of the Court is broad as to the nature of the relief.

Accordingly, the Court will grant a conditional release, and after the petitioner has successfully been on conditional release for a reasonable period of time, an application may be made to enlarge it to an unconditional release.

As to the terms of the release, the Court will hear counsel in connection with the framing of the order. Government counsel may wish to consult with one of the two senior physicians of John Howard Pavilion of Saint Elizabeths Hospital as to the conditions to be imposed.

A transcript of this oral decision will constitute the findings of fact and conclusions of law.