No. 20543.

RUDOLPH R. BARTOSIK *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(393 P.2d 571)

Decided June 29, 1964.    Rehearing denied July 20, 1964.

Mr. D. E. JOHNSON, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. GEORGE W. NICASTRO, Special Assistant, Mr. JOHN E. BUSH, Assistant, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE McWILLIAMS.

IN 1956 Bartosik was charged by direct information with the taking of indecent liberties with a minor child, to which charge he pleaded not guilty by reason of insanity. Upon trial by jury Bartosik was adjudged to be not guilty by reason of insanity and pursuant to C.R.S. '53, 39-8-4 (2) he was thereafter committed to the Colorado State Hospital in Pueblo, which institution is hereinafter referred to as the Hospital, "to be kept and confined therein until given his discharge or probationary release in accordance with the laws of the State of Colorado."

In 1959 the superintendent of the Hospital by letter advised the judge of the committing court that "in his judgment . . . [Bartosik] is eligible for probationary

release." Thereafter, pursuant to C.R.S. '53, 39-8-4 (3) the trial judge ordered Bartosik committed to the Colorado Psychopathic Hospital in Denver for a period of thirty days, there to be observed and examined as to his mental condition. Bartosik was thereafter examined at the Colorado Psychopathic Hospital and in due time and after hearing the trial judge ordered that Bartosik be given a probationary release, certain specific terms and conditions being attached to said release.

In 1962 Bartosik, though still on probationary release, sought an outright "discharge" from the Hospital and as the initial step in his attempt to obtain a "discharge" he voluntarily presented himself at the Hospital to undergo observation and examination. Based on this examination at the Hospital, the superintendent advised the judge of the committing court that in his opinion Bartosik "should be considered by your court for restoration to competency." Bartosik then filed in the trial court in the original criminal proceeding a "Petition for Restoration to Competency," alleging that he was "no longer mentally ill or mentally deficient." The trial court thereupon ordered Bartosik back to the Hospital for further examination. Based upon this further examination, the superintendent of the Hospital wrote a second letter to the committing judge in which he withdrew his earlier recommendation that Bartosik "be considered . . . for restoration to competency" and stated that in his opinion a "complete re-evaluation" led him to the belief that Bartosik "can not be considered as having recovered completely from his mental illness . . . [as] the schizophrenic reaction is still in evidence."

Based on this sequence of events, the trial judge denied Bartosik's Petition for Restoration to Competency and entered a final judgment to that effect. By writ of error Bartosik seeks reversal of this judgment, contending that under the several provisions of C.R.S. '53, 39-8-4, as amended, he was entitled to an outright discharge from the Hospital, or at the very least that he

"was certainly entitled to a trial of the issues." In our view of the matter Bartosik's position is untenable and the judgment must be affirmed.

C.R.S. '53, 39-8-4, as amended, provides that a person who is adjudged not guilty of a crime because of insanity shall be committed either to the Hospital or some other state institution, "there to be confined until given his discharge or probationary release *as hereinafter provided* . . ." (emphasis supplied). The statute then goes on to state that "if thereafter, in the judgment of the superintendent of said hospital *such defendant is no longer insane* or is entitled to his probationary release, he shall forthwith transmit a letter . . . to the judge of the committing court setting forth that in his judgment *the defendant is no longer insane* or is eligible for probationary release . . ." (emphasis supplied). This same statute then goes on to outline the procedures to be followed by the judge of the committing court "upon receipt of such letter."

██ In our view it is the clearly expressed intention of the legislature that the judicial machinery created by C.R.S. '53, 39-8-4, as amended, looking towards the discharge from the Hospital of one who has been committed to that institution upon a determination by a jury that he is not guilty of a criminal act by reason of insanity, is not set in motion *unless and until* the superintendent of the hospital first advises the committing judge by letter that "in his judgment the defendant is no longer insane." In the instant case the superintendent by his initial letter simply stated that Bartosik "should be considered . . . for restoration to competency." Such does not comply with the unequivocal statutory requirement that as concerns a "discharge" (as opposed to a probationary release) from the Hospital the superintendent must first declare that "in his judgment the defendant is no longer insane" before a committing judge has any authority to act in any manner whatsoever. Hence, the trial judge, not having received a letter from

the superintendent of the Hospital stating that Bartosik is no longer insane, had no authority to order Bartosik back to the hospital for a re-examination and at this point in the proceedings he should have denied Bartosik's petition. *A fortiori,* the trial court did not err in its subsequent denial of Bartosik's petition when, as a result of the re-examination, the superintendent of the Hospital withdrew his prior opinion that Bartosik "should be considered . . . for restoration to competency" and then declared that Bartosik was not "to be considered as having recovered from his mental illness."

We regard our disposition of the present controversy to be in full accord with the rationale of *Parker v. People,* 108 Colo. 362, 117 P.2d 316. There, as here, a defendant in a criminal proceeding was adjudged not guilty by reason of insanity and committed to the Hospital. There, the defendant later filed in the original criminal proceeding a Petition for Restoration to Reason, which was denied without hearing on the ground that it was legally insufficient because the superintendent did not and had not advised the trial court that Parker was "restored to reason," restoration to reason being the test under the then existing statute. Here, the superintendent did not advise the committing judge by letter that Bartosik was "no longer insane" and in the absence of such a letter Bartosik's petition was quite properly denied. Finally, it should be observed that neither in the Parker case nor the instant case is there any suggestion of "bad faith" on the part of the superintendent of the Hospital.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE FRANTZ concur.