# Richmond

## Dr. Joseph R. Blalock, Supt., Etc. v. Mervin Michael Markley, Jr.

April 24, 1967.

Record No. 6401.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Richard N. Harris, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the plaintiff in error.

*D. Burke Graybeal* for the defendant in error.

I'Anson, J., delivered the opinion of the court.

On July 19, 1965, Mervin Michael Markley, Jr.,[1] filed in the Circuit Court of Smyth County a petition for a writ of habeas corpus against Dr. Joseph R. Blalock, superintendent of Southwestern State Hospital, asserting, among other things, that he was not and never

(1) Petition filed under name of Mervin Michael Markley.

had been mentally ill or insane, and praying for his release from the hospital. After a hearing, the trial court was of opinion that Markley was sane, and "in accordance with the provisions of Code § 37-123" ordered him to "be returned to Hustings Court of the City of Newport News for such action as they may deem advisable." We granted a writ of error to the judgment.

On April 8, 1963, Markley, who was then 17 years of age, was arrested and subsequently indicted for the "felonious stabbing" of a 15-year-old girl in the city of Newport News, Virginia. At his trial in the Hustings Court of the City of Newport News he admitted that he strangled and stabbed her because he had "an impulse to kill someone." He had not known the young girl prior to the wounding.

A jury found Markley "not guilty by reason of insanity." The trial judge deemed that his discharge from custody was dangerous to the public peace and safety, and pursuant to § 19.1-239, Code of 1950, 1960 Repl. Vol. (Acts of Assembly, 1960, ch. 366, p. 539-540), by orders of October 17 and October 22, 1963, he committed Markley to the Southwestern State Hospital to "be confined under special observation and custody until the superintendent of that hospital and the superintendent of any other state hospital or feeble-minded colony shall pronounce him sane and safe to be at large * * *." The October 22 order also provided, "This court retains jurisdiction of this matter, and it is further ordered that the said Mervin Michael Markley, Jr., is not to be furloughed nor released from confinement in said Hospital until this court has been first notified and further that if and when he shall have been pronounced sane and safe to be at large within the dictates of this order he shall be returned to this court * * *."

Pursuant to the commitment orders, Markley was admitted to the hospital on October 26, 1963. He has been there continuously except for several days in December, 1964, when he escaped and went to some relatives in Independence, Missouri, taking with him some funds from the hospital canteen.

At the habeas corpus hearing, Markley testified and argued *pro se* that he was sane, that he had never been insane, and that he was entitled to his release.

Dr. Blalock testified that Markley was not insane, mentally ill, epileptic, inebriate, or mentally retarded. However he was of the opinion that Markley was "more dangerous than the average" person "because of his potentialities arising within the framework of his personality." He could not state that it was safe for Markley to be at

large, and indicated that he needed more time in which to make a judgment on that question.

There was no evidence presented to show that it was safe for Markley to be at large.

Dr. Blalock contends, (1) that the trial court erred in ordering Markley's release from the institution under Code § 37-123, since the commitment was pursuant to § 19.1-239 and the committing court specifically retained jurisdiction as to any subsequent release; and (2) that the Circuit Court of Smyth County could not order the release without any pronouncement from the superintendent of the hospital where Markley was confined and the superintendent of another State hospital or colony that Markley was sane and safe to be at large.

Code § 19.1-239, at the time of the entry of the order appealed from, provided:

"When the defense is insanity or feeble-mindedness of the defendant at the time the offense was committed, the jury shall be instructed if they acquit him on that ground, to state the fact with their verdict. If the jury so find the court shall thereupon if it deem his discharge dangerous to the public peace or safety, order him to be committed to the proper State hospital for the insane as set forth in § 19.1-228 and be confined there under special observation and custody until the superintendent of that hospital and the superintendent of any other State hospital or colony shall pronounce him sane and safe to be at large." Acts of Assembly 1964, ch. 231, p. 433, amending Acts of Assembly, 1960, ch. 366, pp. 539-540, pursuant to which Markley was committed.[2]

Code § 37-123 permits a person confined in a hospital as mentally ill, epileptic, mentally deficient, or inebriate to test the legality of his detention by habeas corpus in a court of record in the city or county in which the hospital is located, or in a court of record "of the city of the county or city adjoining the county and city in which the hospital is located."

Counsel for Dr. Blalock concedes that the remedy provided in § 37-123 would have been available to Markley but for the fact that the committing court specifically retained jurisdiction to deal with any subsequent release of Markley, and it has the sole jurisdiction to order his release. However, it is unnecessary for us to decide

---

(2) The 1966 General Assembly rewrote Code § 19.1-239 (Acts of Assembly 1966, ch. 659, p. 1026).

whether the retention of jurisdiction by the committing court deprived Markley of his right to test by habeas corpus in the Circuit Court of Smyth County the legality of his confinement.

It is generally held, both in habeas corpus proceedings and other statutory proceedings for the release of a person committed to a mental institution after his acquittal of a criminal offense on the ground of insanity, that the burden of proving eligibility for release rests on the petitioner. Annot., *Release of One Committed to an Institution as Consequence of Acquittal of Crime on Ground of Insanity*, 95 A. L. R. 2d 54, 106-108 (1964), and the cases there collected. See also Code § 19.1-239(3), as amended, *supra*, n.2. Thus for Markley to be eligible for release, the superintendent of the Southwestern State Hospital and the superintendent of another State hospital had to pronounce him sane and safe to be at large, pursuant to the requirements of Code § 19.1-239.

The evidence here shows that Markley is sane, but he has not been pronounced safe to be at large by the superintendent of the institution where he is confined and the superintendent of any other State hospital or colony. Moreover, it was not shown that such pronouncement was arbitrarily withheld. Hence Markley did not sustain the burden of proving his eligibility for release from the hospital.

For the reasons stated, the judgment of the court below is reversed and the petition for a writ of habeas corpus is dismissed.

*Reversed and dismissed.*