Mr. Justice McWilliams
delivered the opinion of the Court.
In 1956 Bartosik was charged in each of two separately filed informations with the crime of taking indecent liberties with the person of a minor child. C.R.S. ’53, 40-2-32. To these charges Bartosik pled not guilty by reason of insanity. Upon trial a jury adjudged him to be insane and pursuant to statute he was thereafter committed to the Colorado State Hospital in Pueblo, C.R.S. ’53, 39-8-4(2).
Pursuant to C.R.S. ’53, 39-8-4(3), Bartosik in 1959 was given a “probationary release” from the Hospital.
In 1962 Bartosik sought a so-called “discharge” from the Hospital. The trial court denied Bartosik’s request and upon review we upheld the action thus taken by the trial court. See Bartosik v. People, 155 Colo. 219, 393 P.2d 571.
In 1965 Bartosik, who was still on probationary release from the Hospital, again sought a so-called “dis *269 charge” from the Hospital. More specifically, on July 23, 1965 the trial court (the Honorable William Gobin) denied a “Petition for Restoration to Competency” theretofore filed by Bartosik. Thereafter, Bartosik filed an amended petition which, in the main sought to reurge those matters previously raised in his original petition. The relief prayed for in the amended petition was denied by the Honorable Robert Sanderson, the Honorable William Gobin in the meantime having disqualified himself. By writ of error Bartosik now seeks once again a review of this entire matter.
Bartosik’s Petition for Restoration to Competency, as well as his amended petition, were apparently filed pursuant to C.R.S. 1963, 71-1-26. It would appear to be at once apparent that this particular statute does not apply to one in Bartosik’s situation, i.e. where the commitment resulted, not from any civil proceeding, but in a criminal proceeding where a jury has adjudged an accused to be insane. Counsel argues in this regard, however, that because the General Assembly in 1965 “repealed and reenacted” C.R.S. 1963, 39-8-1 through 4, that he is thereby “compelled” to proceed under C.R.S. 1963, 71-1-26. For reasons which we shall set forth, we do not agree with this argument.
It is quite true that the General Assembly in 1965 “repealed and re-enacted, with amendments” that which then appeared as C.R.S. 1963, 39-8-1 through 5. See Colorado Session Laws 1965, Chapter 125, pp. 486 to 495. And we are aware that this same General Assembly declared that “[t]he provisions of Sections 39-8-1 through 4, as amended, shall apply only to persons charged with any crime allegedly committed on or after the effective date of such section as amended.” See 1965 Perm. Supp., C.R.S. 1963, 39-8-5. However, this general provision must be read in connection with the specific provision found in 1965 Perm. Supp., C.R.S. 1963, 39-8-4(3) (a). And this latter section of the statute provides that the “release” procedures defined in that particular section should *270 apply “in any case in which a defendant either is found insane and is committed to an institution as hereinabove provided, or has been found insane and committed to an institution pursuant to law in effect prior to the effective date of this section. . . .” (Emphasis added.) It is for this reason that we conclude that 1965 Perm. Supp., C.R.S. 1963, 39-8-4(3) does provide the procedure where Bartosik may seek his outright “discharge” from the State Hospital. This being the case, then, there is no necessity for Bartosik to resort to the procedure contained in C.R.S. 1963, 71-1-26. Hence, his petition brought under the latter statute was properly denied.
As we understand the record before us, Bartosik in April 1965 presented himself to the State Hospital and it was the recommendation of the Hospital authorities that Bartosik be returned to the Hospital “for a period of observation, to again make a determination as to his present sanity.” The trial court, however, because of certain language appearing in Bartosik v. People, supra, was reluctant to make any order that Bortosik be re-examined at the Hospital. No language contained in Bartosik v. People, supra, should be construed as in any manner precluding the trial court from entering such an order. Indeed, inasmuch as Bartosik had been “away” from the Hospital on a probationary release since 1959, the Hospital authorities would almost have to re-examine him in order to determine his present mental condition. After all, Bartosik is still on “probationary release,” and if the trial court could terminate this probationary release and return him to the Hospital, certainly the trial court has the power to order that he be returned to the Hospital for the period of time necessary for his re-examination.
Finally, we are aware of the fact that Bartosik levels the broad charge that the Hospital authorities are guilty of “bad faith.” How this charge can even be made when, according to the record, the Hospital officials stand ready to re-examine Bartosik is a little hard to *271 fathom. In any event, at best the issue of “bad faith” is certainly premature under the circumstances.
The judgment is affirmed.