Sammie J. FRANKLIN, Jr., Appellant,

v.

Charles MEREDITH, John G. Ralston, and Edward J. Keating, Appellees.

No. 9451.

United States Court of Appeals
Tenth Circuit.

Nov. 24, 1967.

J. Lawrence Hamil, Denver, Colo., for appellant.

Duke W. Dunbar, Atty. Gen., Frank E. Hickey, Deputy Atty. Gen., and George E. DeRoos, Asst. Atty. Gen., Denver, Colo., for appellees.

Before MURRAH, Chief Judge, and JONES,* and HILL, Circuit Judges.

* Of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

HILL, Circuit Judge.

The appeal is from an order entered by the trial court in an action brought by appellant against appellees for the alleged violation of his civil rights under 42 U.S.C. § 1983 and § 1985(3). The order appealed from sustained the motion of the appellees to dismiss the action for failure to state a cause of action and by such dismissal denied an application, on behalf of appellant, to convene a three-judge court, pursuant to 28 U.S.C. § 2281, for the purpose of testing the constitutionality of a Colorado statute, § 39–8–4(5), C.R.S. 1963, under which appellant alleged he was being confined in the Colorado state penitentiary.

The pertinent facts leading up to the alleged deprivation of civil rights are undisputed and must be examined before we reach the legal issues presented. Appellant, in 1960, was charged by information in the State District Court in and for the City and County of Denver with the crimes of burglary, larceny, receiving stolen property and larceny by bailee. To these charges appellant entered a plea of not guilty by reason of insanity, was tried to a jury and found to be insane at the time of commission of crimes charged. Pursuant to a Colorado statute [1] appellant was then committed to the state mental hospital at Pueblo. Thereafter and pursuant to the same statute, appellee Keating, as a state district judge, held a hearing after certification by appellee, Meredith, as superintendent of the state mental hospital, determined that appellant was no longer insane and placed him on probation for five years. About four months later Judge Keating revoked the probation and appellant was returned to the custody of Dr. Meredith, as hospital superintendent. Appellant was transferred to the state penitentiary at the direction of Dr. Meredith. About a year and a half later Judge Keating conducted another sanity hearing for appellant, found him to be insane and ordered him recommitted. An appeal

from that order is now pending in the Colorado Supreme Court.

██ Appellant sought damages under 42 U.S.C. § 1983 and § 1985(3) against appellee Keating, who is a Colorado state district judge, appellee Meredith, who is Supervisor of the Colorado State Hospital, and appellee Ralston, who is a Staff Psychiatrist in the Colorado State Hospital. The district court granted the appellees' motion to dismiss the complaint against them on the grounds that the complaint failed to state a claim. The basis of this decision was the court's finding that all three of the defendants were protected by governmental immunity against such a suit for damages. For purposes of testing the validity of the district court's actions the facts alleged by appellant in his complaint must be assumed true.[2] Essentially the allegations of the complaint are as follows: In May of 1964, thirty days after appellant was found to be sane, appellee Judge Keating placed him on a five year probation pursuant to § 39–8–4(5), C.R.S. 1963. In June of 1964, appellee Keating caused appellant to be arrested and entered an order recommitting him to the state hospital in Pueblo, Colorado. Appellee Keating, acting in conspiracy with the other appellees, contacted appellee Meredith, superintendent of the state hospital, and stated that he wanted appellant to be imprisoned in the state penitentiary. Appellee Meredith then had appellant transferred to the penitentiary. Appellee Ralston, who was a psychiatrist at the state hospital, believes that appellant is actually sane but he still refuses appellant's request to ask appellee Meredith to transmit a letter to the committing court so that he might have a sanity hearing. All of the appellees are thus acting in conspiracy to deprive appellant of rights guaranteed him by the Fourteenth Amendment of the United States Constitution, and he is being confined in a penal institution among insane persons and felons, even though he has not been

---

1. C.R.S. 39–8–4, 1963.

2. E. g., O'Bryan v. Chandler, 10 Cir., 352 F.2d 987.

convicted of any crime and is completely sane.

The district court first found Judge Keating shielded from liability by judicial immunity. This decision was made without the benefit of a recent Supreme Court decision, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, but the district court's opinion is in accord with the Supreme Court's reasoning in Pierson.

■■■ The Supreme Court, in Pierson v. Ray, certainly put at rest any question as to the application of the common law doctrine of judicial immuity to damage suits brought under § 1983. In that case the Chief Justice said, "This immunity applies even when the judge is accused of acting maliciously and corruptly * * *." Also, the decision expressly applied the doctrine to actions brought under § 1983. This immunity is, however, limited to acts committed within the judicial jurisdiction of the judge. As the trial judge pointed out, Judge Keating had continuing jurisdiction under Colorado law[3] over both appellant and the subject matter involved. There can be no question under the allegations of the complaint and the surrounding facts but that the doctrine of judicial immunity is applicable to Judge Keating.

The trial judge also legally determined that Meredith and Ralston were clothed with governmental immunity in this suit because the acts complained of by the allegations of the complaint were discretionary in nature. These appellees, being state officials, the trial judge determined under Colorado law that such acts were discretionary.[4]

■■■ The Supreme Court has not authoritatively spoken on the applicability of the doctrine of governmental immunity to actions brought under the Civil Rights Act against state officials nor has this court. The doctrine of governmental immunity, when applied to officials other than members of the judiciary, is not absolute but may be described as of a limited nature.[5] The limitation placed upon this immunity is that it covers only those acts which are discretionary in nature.[6] The Second Circuit, however, in a recent case, Jobson v. Henne, 2 Cir., 355 F.2d 129, held that not all subordinate state officials are entitled to even this limited immunity against actions brought under the Civil Rights Act.[7] We don't believe that the Second Circuit was suggesting that governmental immunity does not apply in any respect to causes brought under the Civil Rights Act against state officials,[8]

---

3. See § 39–8–4, C.R.S., 1963, and § 39–8–4, C.R.S., 1963, (1965 Supp.). Cf. Zimmerman v. Angele, 137 Colo. 129, 321 P.2d 1105; Kendall v. People, 126 Colo. 573, 252 P.2d 91.

4. The trial court found that the Colorado Supreme Court in Parker v. People, 108 Colo 362, 117 P.2d 316, and Bartosik v. People, 155 Colo. 219, 393 P.2d 571, characterized the functions performed by appellees as discretionary in nature.

5. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Preble v. Johnson, 10 Cir., 275 F.2d 275; Hoffman v. Halden, 9 Cir., 268 F.2d 280.

6. E. g., Garner v. Rathburn, 10 Cir., 346 F.2d 55.

7. The plaintiff in Jobson v. Henne was an inmate in a state mental hospital and brought the cause of action under the Civil Rights Act against the officers of the institution who imposed a work pro-

gram upon plaintiff allegedly subjecting him to involuntary servitude. The court reversed the lower court's dismissal on the grounds that the officials were not protected by governmental immunity because they had the power to alter the alleged unconditional work program.

8. The Second Circuit distinguishes but does not deny the applicability of Francis v. Lyman, 1 Cir., 216 F.2d 583, an action against former commissioners of correction, parole board members, and superintendents of State Farm and State Reformatory for deprivation of constitutional rights in committing and continuing confinement of plaintiff in state penal institutions for the mental defective. The First Circuit affirmed the dismissal of the action against all defendants. As to some, the question was whether they were protected by immunity. The court distinguishes between deprivation of constitutional rights because of racial discrimination and the

merely that its application should be limited. They were apparently led to this result by reasoning that "[t]o hold all state officers immune from suit would largely frustrate the salutary purpose" of the Civil Rights Act. Id. at 133. We do not feel that this reasoning requires the result here that was reached by the Second Circuit. We are not compelled here to delineate the scope of immunity which should be applied to state officials in suits brought under the Civil Rights Act because of the express statutory authority for the acts complained of. It is clear that the appellees in this case should not be denied the shield of governmental immunity. The complaint alleges that Meredith caused Franklin to be transferred from a state hospital to the penitentiary. Such a request for transfer of a mental patient is expressly provided for by Colorado law.[9] Thus the alleged act is not only an act of discretion on the part of the superintendent of the state hospital as found by the trial court but is an act expressly provided for and authorized by Colorado law.[10] The only allegation against Ralston appears to be that he believes Franklin to be sane and refuses to so advise his superior, Meredith. This is certainly not a substantial allegation that would support the cause of action against Ralston. First, the allegation is simply one of failing to do something Ralston was not compelled by the duties of his position to do and he had no legal duty to do.[11] Further the decision of appellee Ralston not to initiate a release procedure may be said to be entirely discretionary as found by the trial court. Finally there exists a constitutional procedure whereby the appellant may test the validity of his confinement. See Pigg v. Patterson, 10 Cir., 370 F.2d 101.

We do not believe that the allegation of the existence of a conspiracy between the three appellees effects the application of the doctrine of immunity. The overt acts alleged in furtherance of the conspiracy are the very acts that make the doctrine applicable in the case.

██ Appellant sought an injunction against the enforcement of § 39–8–4(5), C.R.S., 1963, on the basis that this statute is unconstitutional in failing to provide procedural due process in the revocation of a probation granted someone formerly held to have been not guilty of an alleged crime by reason of insanity and later certified by the state hospital to be sane. The district court denied appellant's application on the basis that the particular section in question had been repealed and thus an attempt to enjoin the enforcement of the statute was moot. Appellant argues that the repeal and amended statutes are applicable only to those persons charged with any crime committed on or after the effective date of the newly amended sections and that appellant and some one hundred and seventy other persons in similar circumstances are still to be handled in accordance with § 39–8–4(5), C.R.S., 1963. Although not directly related to appellees' position they point out in their brief that the Colorado Supreme Court in the case of Bartosik v. People, 430 P.2d 83 (July 17, 1967), held that the 1965 amendment provides a release procedure for those who were committed prior to the effective date of the amendment. In addition, Colorado by law repealed the section of the 1965 amendment which made it only applicable to those persons charged with a crime after its effective date, so that at the present time the 1965 amendment applies to all those persons who are in

facts of the Francis case. It felt that the scope of governmental immunity should be established on a case by case basis and applied immunity to the defendants in that case. Factually, the instant case is much more similar to Francis v. Lyman than Jacobson v. Henne. Therefore, the application of these two cases would not be contradictory with affirmance of the lower court's dismissal.

9. § 71–2–4(3), C.R.S.1963. Under this statute only the governor of the state has authority to make such a transfer.

10. Cf. Francis v. Lyman, 1 Cir., 216 F.2d 583 at 585.

11. Cf. Francis v. Lyman, 1 Cir., 216 F.2d 583 at 585.

a similar position as appellant.[12] In view of these developments it is clear that appellant's argument has no merit and that neither appellant nor any other of the one hundred and seventy persons allegedly in a similar position with appellant are affected by the former statute 39–8–4 (5), C.R.S., 1963; therefore, the refusal to allow the application for a three-judge district court to test the constitutionality of this former statute was proper. As noted by the district court judge, the proper method for appellant to test the constitutionality of his imprisonment is by a habeas corpus proceeding either in the state or federal courts.

Affirmed.

---

12. The applicability section of the 1965 amendment, 39–8–5, C.R.S.1963, (1965 Supp.) was repealed by Senate Bill No. 45 during the 1967 Colorado Legislative Session, approved by the Governor on April 17, 1967.