**Ronald Rea ROGERS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 15639.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 31, 1970.

Rehearing Denied Nov. 5, 1970.

**714**

Walter B. Conway, Houston, for appellant.

Carol Vance, Dist. Atty., Harris County, Joe S. Moss, Asst. Dist. Atty., Houston, for appellee.

BELL, Chief Justice.

Appellant was tried in the 179th District Court for the offense of rape. On May 25, 1967, he was tried before a jury and was acquitted on the ground that he was insane at the time the crime was committed. The jury also found he was insane at the time of trial and that he should be hospitalized in a mental hospital for his own welfare and protection and the protection of others. Pursuant to the provisions of Article 46.02, Section 2(d) (1), C.C.P., the court, based on the jury verdict, rendered judgment committing him to the Rusk State Hospital there to be confined until he should become sane. He has been confined there since that time.

In November, 1969, the head of the Hospital, hereinafter called the superintendent, not having certified him to be sane as authorized by Article 46.02, Section 3(b), C.C.P. if the superintendent believes the person to be sane, appellant filed his "Request for Determination of Sanity" with the superintendent. This request is pursuant to Article 46.02, Section 3(c), C.C.P., since appellant had been in the hospital for at least one year. He swore he was sane and that he does not need treatment for his own protection and welfare or for the protection and welfare of others. He stated he stood ready to so prove by testimony of competent and qualified physicians and surgeons.

The head of the hospital, as required by Article 46.02, caused appellant to be examined by staff physicians. Three staff physicians examined him. Based on the reports of these physicians and his own appraisal, the head of the hospital, on December 8, 1969, certified to the committing court that he could not certify appellant as being sane but certified he needed additional treatment. Forwarded with the certificate were the reports of the examining physicians.

On January 16, 1970, appellant *filed* with the committing *court* his "Motion for Hearing on Request for Post-Commitment Determination of Sanity." In it he asked for the appointment of experts to examine him and that a jury be empaneled to determine his sanity. He also stated he felt that his written request reflected "probable merit." He attached to the request filed

with the court reports of two physicians of his choosing. He stated that the medical evidence showed that he did not require hospitalization for his own welfare and protection or the welfare and protection of others.

Appellant's brief reflects there are other indictments pending against him.

On January 16, 1970, the judge of the committing court entered its order finding the written request, the certificate of the superintendent of the hospital and the accompanying statements of the hospital psychiatrists did not reflect probable merit. The judge therefore denied the hearing requested to determine appellant's present condition as to sanity.

Appellant timely filed his motion for new trial. On February 6, 1970, the court overruled the motion and stated he had not considered the physicians' reports filed by appellant, and appellant then gave notice of appeal to this court.

Article 46.02, Section 3, prescribes the procedure that was followed by the judge of the committing court. This article provides for an appeal from the determination by the judge of whether there was probable merit.

Appellant, for reversal, in substance asserts the following:

1. Article 46.02, Section 3(c) (d), is unconstitutional in that in a proceeding to determine whether a person has been restored to sanity he is entitled to a jury trial under Article 1, Section 15 of the Texas Constitution and this statutory Article denies him that right.

2. Said Article of the Code of Criminal Procedure denies due process under Article VI and the Fourteenth Amendment of the Constitution of the United States. The contentions in this regard are that the proceeding before the judge is ex parte in nature and appellant is given no right to appear, be represented by counsel, present evidence, or cross-examine witnesses.

3. Said Article denies equal protection of the law in that if the superintendent of the hospital certifies a person to the committing court as having been restored to sanity, but the court disagrees, the superintendent may after 180 days again certify such person as sane, whereas in a case such as appellant's where the superintendent certifies the person is still insane, and the committing court agrees, such person may not again ask for another certificate of sanity from the superintendent for one year.

4. The committing court abused its discretion in determining there was not probable merit.

In asserting that he is entitled to a jury trial to determine whether his sanity has been restored, appellant relies on Article I, Section 15 of the Texas Constitution which provides that the right of trial by jury shall remain inviolate, and two cases decided by the Waco Court of Civil Appeals. In those two cases that court held that Section 82(e) of Article 5547, V.A.T.S., was unconstitutional because it denied the right of trial by jury in a restoration proceeding. These cases are: Swinford v. Logue, Tex.Civ.App., 313 S.W.2d 547, and Hulick v. Mormino, Tex.Civ.App., 435 S. W.2d 628.

The statute involved in each case provided in substance that a patient could petition the county for reexamination and hearing to determine whether the patient required further hospitalization as a mentally ill person. The judge was then to notify the head of the hospital who should then cause the patient to be examined. If he determines there is such need, or fails within 10 days to file any certificate, the judge shall fix a date for hearing and appoint a physician to examine the patient. After the hearing by the court, he shall dismiss the petition unless he determines there is no longer need for hospitalization.

Swinford was a mandamus proceeding in the Court of Civil Appeals against the county judge to afford a jury trial. The

relief was granted. A writ of error was applied for but was dismissed on Logue's motion. Review by the Supreme Court of a decision of a court of civil appeals in an original proceeding is not by writ of error.

Hulick was also an original proceeding to require the filing of the patient's petition and to proceed to trial. The relief was granted. The court, citing Swinford, stated the patient was entitled to a jury trial.

The Supreme Court has not passed on the question of the right to trial by jury in a restoration proceeding. That Court did hold in White v. White, 108 Tex. 570, 196 S.W. 508, that a jury trial was necessary before there could be commitment because a statute in existence when the Constitution of 1876 was adopted provided for trial by jury in such instance. As the Court stated, Article I, Section 15, in providing that the right of trial by jury should remain inviolate means such right as existed at common law or by statute when the Constitution of 1876 was adopted. See also a good discussion in Pittman et ux. v. Byars et ux., 51 Tex.Civ.App. 83, 112 S.W. 102 (Austin Tex.Civ.App.) n. w. h.

█ We do not deem those cases as controlling in this case. In this case the proceeding was one to determine whether there was probable merit in appellant's assertion that he had regained his sanity, whereas, the above cases were conventional trials to determine restoration of sanity of a person committed in a purely civil proceeding. Under the statute before us if a judicial officer finds probable merit appellant will be entitled under Article 46.02 to a jury trial to determine whether he has become sane.

Here we are dealing with a person who is of a special class. He is of a class that was charged with crime. He entered a plea of not guilty by reason of insanity at the time the alleged offense was committed. In a trial before a jury he was acquitted on the ground of insanity at such time. In conformity with Article 46.02, the issue as to sanity at the time of trial was submitted to a jury and the jury found as follows:

1. He is insane at the present time.

2. That the defendant required hospitalization in a mental hospital for his own welfare and the protection of others.

Texas has given appellant a full jury trial on the issue of insanity at the time of trial. This is required before commitment is possible. Some states and the District of Columbia allow automatic commitment after such an acquittal without inquiry as to present insanity on the theory that there is a presumption of continued insanity. This has been held valid so long as his continued insanity can be subsequently tested in a full hearing. Illustrative of this is the case of Ragsdale v. Overholser, 108 U. S.App.D.C. 308, 281 F.2d 943. It discusses that a person such as appellant is in a special class that may in some respects be treated differently from an insane person who has been committed in a purely civil proceeding.

At the time our Constitution was adopted there was, so far as we have been able to find, no statute prescribing a trial by jury on the issue of restoration of sanity of a person committed after acquittal because of insanity. If he was acquitted he was discharged. For him to be committed, there being no statute governing the particular situation, someone would have to file lunacy proceedings under the statutes governing commitment of persons who were non compos mentis or were allegedly lunatics. Thereafter such a person was released by the committing judge or the persons in charge of the hospital if they found him sane.

We hold appellant is not entitled to trial by jury on the issue as to whether there was probable merit in his contention that he has regained his sanity.

Various states have statutes which provide, as does Article 46.02, that a certificate from the head of the institution,

where a criminally insane person is confined, that such person has regained his sanity, is a prerequisite to the right to a conventional trial on the issue as to restoration of sanity. Such statutes have generally been held valid where there is some remedy to, in an adversary proceeding, determine whether the administrative official is acting arbitrarily and capriciously in withholding a certificate. There is an extensive annotation in 95 A.L.R. 55–111. Phyle v. Duffy, 334 U.S. 431, 68 S.Ct. 1131, 92 L.Ed. 1494; State v. Garrison, 137 Wash. 577, 243 P. 373, 374; State v. Hartman, 192 Wash. 559, 74 P.2d 226; People v. Dubina, 304 Mich. 363, 8 N.W.2d 99; Robertson v. Cameron, 224 F.Supp. 60 (U.S.D.C., D.C.); Overholser v. Leach, 103 U.S.App.D.C. 289, 257 F.2d 667; Parker v. People, 108 Colo. 362, 117 P.2d 316, 317; Bartosik v. People, 155 Colo. 219, 393 P.2d 571; Pigg v. Patterson, 370 F.2d 101 (U.S.Ct.App.10th Cir.); Blalock v. Markley, 207 Va. 1003, 154 S.E.2d 158; Ex Parte Clark, 86 Kan. 539, 121 P. 492.

While not a case involving the question of restoration of sanity but rather the refusal of the Supreme Court of Florida to hear a writ of coram nobis, is the case of Hysler v. State of Florida, 315 U.S. 411, 316 U.S. 642, 62 S.Ct. 688, 86 L.Ed. 932. The court held the Florida court did not deny due process in refusing the application without a hearing because no probable merit was shown.

■ The statute delegated the duty to the head of the hospital of making the certificate that the person is now sane if he and the other examining physicians are of that opinion. They are public officials and it will be presumed they will perform their duty.

■ If appellant believes the officials in refusing to certify regained sanity are acting arbitrarily and capriciously or in clear abuse of discretion, he has his remedy by mandamus. In such hearing he would be entitled to introduce evidence, be confronted by adverse witnesses who would be cross-examined and the right to counsel. Dykes v. City of Houston, 406 S.W.2d 176 (Tex.S.Ct.); City of San Antonio v. Zogheib, 101 S.W.2d 539 (Tex.Com.App., opinion adopted); Giles v. City of Houston, 59 S.W.2d 208 (Houston Tex.Civ. App.), writ dism.; Parrish et al. v. Wright et al., 293 S.W. 659 (Amarillo Tex.Civ. App.), writ ref.

■ There is no denial of equal protection of the law as appellant asserts. While appellant, under the statute, after the court has found a want of merit in his application or after a jury trial resulting in his recommitment, may not again for one year apply for re-examination, there is nothing to prevent the superintendent from making a certification of restoration of sanity, at least after 180 days after recommitment as in other cases.

■ The term "probable merit" was not legally objectionable as being indefinite. "Probable" means supported by evidence strong enough to establish a presumption but not proof; likely to be true or real, but not certain to be believed. Webster's Collegiate Dictionary, Fifth Edition. "Probable merit" in the context in which it is used, we think means there is more than likely substance in the request for determination of sanity, the certificate of the superintendent and the accompanying papers that deserve a conclusion that the reasonable mind could reasonably believe appellant has regained his sanity.

■ We have studied all of the instruments immediately above mentioned and are of the view that the judge of the committing court did not abuse his discretion in finding they did not show probable merit.

Affirmed.

COLEMAN, J., concurring.

COLEMAN, Justice (concurring).

In view of the importance of the question of the right of the legislature to con-

dition a trial on the issue of restoration of sanity on a finding of probable merit in a nonadversary proceeding, this concurring opinion has been prepared. Article 46.02, Sec. 3(c), does not deny a person duly found to be of unsound mind the right of a trial by jury on this question. It grants such a trial. This section provides that the head of the mental hospital to which the person has been committed may certify to the committing court at any time that he is of the opinion that such person is sane. In this event the judge of such court is required to empanel a jury to determine the issue of sanity. If the head of the mental hospital fails to make such a certificate within one year, such a person may seek a post-commitment determination of sanity by submitting such a request to the head of the institution. The matters which may be included in such request are not set out in the statute. It does not prohibit the inclusion of supporting affidavits.

On receipt of this request the head of the institution shall immediately cause the inmate to be examined by one or more staff physicians, and shall immediately certify to the committing court the inmate's written request, the reports and findings "of any examining physicians," and "his own findings, if any."

The judge of the committing court shall immediately cause these documents to be filed by the clerk of the court, after which he "shall examine such written request and accompanying papers to determine if they reflect probable merit." If he finds that they do not reflect probable merit, he must enter an order to that effect, which order is appealable to ascertain whether there was an abuse of discretion. If he finds that the papers reflect probable merit, he must provide a jury trial on the question of sanity. If he desires he may appoint disinterested qualifed experts to examine the inmate, and consider their reports, or hear their testimony, and he may require the institution to forward to the court all of the hospital records.

All of these proceedings are for the purpose of determining whether there is probable merit in the inmate's contention that he has regained his sanity. A *trial* is directed in the event probable merit is shown. No cases from this, or any other jurisdiction, have been cited in which the validity of such a statutory procedure has been discussed. In thus restricting the right to a jury trial the legislature has not acted in an arbitrary or unreasonable manner.

It does not appear that a jury trial on the issue of restoration of sanity has been traditionally granted in the State of Texas or was allowed at the time of the adoption of the Constitution of this State. For many years such persons were merely ordered committed to an institution where they remained until the head of the institution ordered them released. In 1863, the Legislature of Texas, then a member of the Confederate States of America, enacted a law authorizing the courts to order one found to be insane, who had been charged with or convicted of crime, "conveyed to, and retained in, the State Lunatic Asylum until removed by order of the court, or the judge thereof, by which he was committed to the asylum. Provided, the person so committed to the asylum may be removed to the custody of the Sheriff of the County in which he is charged or convicted as aforesaid, by the order of any Judge of the District Court, or discharged upon the order of a Judge authorized to issue the writ of habeas corpus, as in other cases authorized by law."

The emergency clause of an Act passed in 1937 reflects that Texas then had no laws authorizing the commitment to State institutions for the insane persons charged with crime found upon a trial to be either insane at the time of the commission of the offense or at the time of the trial of such person. General Laws of Texas, Acts of the 45th Legislature, 1937, Regular Session, Ch. 466, pp. 1172–1173. This deficiency was cured by the cited Act. A jury trial on the question of restoration of sani-

ty was also provided. It was conditioned, however, on the action of the superintendent of the hospital. The jury trial was to be ordered by the judge of the committing court when the superintendent certified to him that such a person had become sane. The more liberal provisions of our present statute demonstrate the concern of the people of Texas that those committed to institutions for the mentally ill be returned to society at the earliest time consistent with their own welfare and the welfare of the other citizens of the State. The procedure now provided will promote this goal in a fair and orderly manner.

In 1964, Article 932b, § 4, Texas Code Crim.Procedure, provided: "If the question of the sanity of a person under death sentence is raised and sufficient proof is shown to satisfy the judge of the convicting court * * * that reasonable doubt exists as to his sanity, the judge shall empanel a jury to determine whether the person is sane or insane. * * *" In Welch v. Beto, 355 F.2d 1016 (Court of Appeals, 5th Cir.1966), the court said:

"The second thrust under this 'due process' question is whether the appellant was accorded due process under the Texas statutes. As stated above, the Texas law creates in petitioner a substantive right not to be executed while insane, even if such right is not contained in the due process clause of the Fourteenth Amendment. Appellant 'is entitled to have procedural due process observed in the protection of these substantive rights even though substantive due process would not compel the rights to be given'. United States ex rel. Smith v. Baldi, 192 F.2d 540, 544 (3 Cir. 1951), aff'd 344 U. S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953). Texas law looks to a jury to try this question of sanity where there is reasonable doubt as to such sanity. It is left to the judge of the convicting court to determine whether such reasonable doubt exists, and, although the trial judge is vested with considerable discretion in the matter, he is not given arbitrary power.

If he acts in a fashion unsupported by the evidence, he has ceased to act judicially, and has denied the prisoner before him procedural due process."

In considering the same question under the law of California, Mr. Justice Harlan, in a concurring opinion, has said: " * * At the post-conviction stage of a capital case, it seems to me entirely proper for the State to condition a prisoner's right to a sanity trial upon a preliminary determination by a responsible official that 'good reason' exists for the belief that the prisoner has become insane. * * *" Caritativo v. People of State of California, 357 U.S. 549, 78 S.Ct. 1263, 2 L.Ed.2d 1531 (1958). See also People v. Shorts, 32 Cal. 2d 502, 197 P.2d 330 (1948).

In Hysler v. State of Florida, 315 U.S. 411, 62 S.Ct. 688, 86 L.Ed. 932 (1942), the court said:

"In brief, a person in Florida who claims that his incarceration is due to 'failure to observe that fundamental fairness essential to the very concept of justice', Lisenba v. California, supra, 314 U.S. 219, 62 S.Ct. (280,) at page 290, 86 L.Ed. 166, even after his sentence has been duly affirmed by the highest court of the State, has full opportunity to have a jury pass on such a claim provided he first makes an adequate showing of the substantiality of his claim to the satisfaction of the Supreme Court of Florida. The decisions of that Court show that a naked allegation that a constitutional right has been invaded is not sufficient. A petitioner must 'make a full disclosure of the specific facts relied on', and not merely his conclusions 'as to the nature and effect of such facts'. The proof must enable the appellate court to 'ascertain whether, under settled principles pertaining to such writ, the facts alleged would afford, at least *prima facie* just ground for an application to the lower court for a writ of error *coram nobis*.' Washington v. Florida, 92 Fla. 740, 749, 110 So. 259, 262; see Skipper v. Schumacher, 124 Fla. 384, 405–408, 169 So.

**720**

58; Skipper v. Florida, 127 Fla. 553, 554, 555, 173 So. 692. * * *

"Such a state procedure of course meets the requirements of the Due Process Clause. Vindication of Constitutional rights under the Due Process Clause does not demand uniformity of procedure by the forty-eight States. Each State is free to devise its own way of securing essential justice in these situations. The Due Process Clause did not sterotype the means for ascertaining the truth of a claim that that which duly appears as the administration of intrinsic justice was such merely in form, that in fact it was a perversion of justice by the law officers of the state. Each State may decide for itself whether, after guilt has been determined by the ordinary processes of trial and affirmed on appeal, a later challenge to its essential justice must come in the first instance, or even in the last instance, before a bench of judges rather than before a jury."

While these cases deal with post-conviction remedies of one previously convicted of crime, it would seem that they support the proposition that the State may place reasonable conditions on the right to a sanity trial of one who has previously been found to be of unsound mind at a jury trial.

I find no sound constitutional objection to the statute under attack. The more difficult question lies in the refusal of the trial judge to consider the physician's reports filed for the first time in the committing court. It appears that the trial judge properly followed the procedure established by the law. The reports were not included in the request to the superintendent, and thus were not properly a part of the application certified to the court by the superintendent. If these reports are not considered it is clear that the trial court did not abuse its discretion in denying the application.

I concur in the decision to affirm the order of the trial court.