IN RE BOYETT.

(Filed November 15, 1904).

1. INSANE PERSONS—*Constitutional Law—Hospitals—Due Process of Law—Acts 1899, ch. 1—Const. N. C., Art. II, sec. 10.*

　An act providing that a judge may, when a person indicted for homicide is acquitted on the ground of insanity, in his discretion commit said person to the hospital for the dangerous insane to remain there until discharged by the general assembly, is unconstitutional.

2. INSANE PERSONS—*Habeas Corpus—Hospitals.*

　A person illegally detained in a hospital for the dangerous insane cannot be released on *habeas corpus* if he is insane at the time of the return of the writ.

Petition by Emmett Boyett for a writ of *habeas corpus,* heard by *Judge G. S. Ferguson,* in Raleigh, September 28, 1904. From an order denying the writ, the petitioner appealed.

*Land & Cowper,* for the petitioner.

Connor, J. The petition herein was filed by E. M. Land on behalf of Emmett Boyett on the 28th day of September, 1904, before his *Honor Judge Ferguson,* setting forth that Emmett Boyett was detained of his liberty by J. S. Mann, Esq., Superintendent of the Hospital for the Dangerous Insane in the City of Raleigh, N. C. That such detention was by virtue of an order made by the Judge of the Superior Court presiding at the November Term, 1903, of Lenoir County. That at said term said Boyett, pursuant to indictment theretofore found by the grand jury, was put on trial charged with the murder of his wife Lena Boyett. That upon his arraignment on said indictment he pleaded not

guilty and was upon such plea tried before the Court and jury. That by the verdict of the jury he was acquitted of said charge. That to sustain his said plea he introduced evidence tending to show that he was insane at the time he killed his wife, and that it was upon such evidence that he relied for his acquittal. That after said verdict was returned by the jury his Honor the Judge presiding made the following order: "Whereas Emmett Boyett was indicted at the above term of the Lenoir Superior Court for the murder of Lena Boyett, his wife, and whereas upon trial of said indictment before the pettit jury duly empanelled to try the same it was admitted by the prisoner's counsel that said prisoner did kill his said wife by shooting her, and whereas said counsel pleaded insanity as a defense to said indictment, and whereas the jury acquitted the said prisoner on the ground of insanity, it is therefore ordered and adjudged by the Court in the exercise of its discretion, in accordance with section 65, Acts 1899, chap. 1, that said Emmett Boyett be at once committed to the Hospital for the Dangerous Insane to be kept in custody therein as provided in said section, and until discharged in accordance with the provisions of section 67 of said act, or otherwise discharged according to law. (Chapter 1, Acts 1899). The sheriff of Lenoir County is commanded at once to deliver said prisoner to the Hospital for the Dangerous Insane at Raleigh and to the authorities governing the same."

That no investigation has been had for the purpose of determining the mental condition at any other time than that of the homicide. That when the verdict was rendered and the Court committed him to the custody of the sheriff he moved the Court that an inquiry as to his mental condition at that time be had. That the Court refused the motion and made the order set out in the record. *Judge Ferguson* issued the writ of *habeas corpus* as prayed for. Pur-

*In re* BOYETT.

suant thereto the officer in charge of the dangerous insane produced the body of the said Boyett, making return to said writ that the said Boyett was "confined in the Hospital for the Criminal Insane by virtue of the order of *Judge Brown,* one of the Judges of the Superior Court of North Carolina, made at the November Term, 1903, of the Superior Court of Lenoir County, a copy of which is herewith filed." Upon the hearing before his Honor *Judge Ferguson,* a certified copy of the record in the case of *State v. Boyett* in the Superior Court of Lenoir County was introduced by which the facts set out in the petition were verified. Dr. J. R. Rogers, the physician in charge of the Hospital for the Criminal Insane of this State, filed an affidavit stating that he had given careful examination and study of said Boyett in reference to his mental condition, and that in his opinion Boyett "is of sound mind and has entirely recovered from any mental·derangement from which he may have suffered in the past." His Honor denied the motion that Boyett be discharged and remanded him to the custody of the Superintendent of the Hospital. From this order the petitioner appealed.

The order committing the petitioner to the Hospital for the Dangerous Insane was made pursuant to the provision of chapter 1, Acts 1899, entitled "An act to revise, consolidate and amend the insanity laws of this State."

Section 65 provides that "When any person accused of the crime of murder  \*  \*  \*  shall have escaped indictment, or shall have been acquitted upon the trial upon the ground of insanity,  \*  \*  \*  the Court before which such proceedings are had shall in its discretion commit such person to the Hospital for the Dangerous Insane to be kept in custody therein for treatment and care as herein provided," etc.

Section 67 provides that "No person acquitted of a capital felony on the ground of insanity and committed to the Hospital for the Dangerous Insane shall be discharged therefrom

unless an act authorizing his discharge be passed by the General Assembly." 'Other provisions are made in this section for the discharge of persons committed under section 65 upon indictments of lower grade.

The petitioner concedes that the order of committal made by his Honor *Judge Brown* is authorized by the terms of the statute. He attacks its validity upon the ground that the statute, section 65, in conferring the power to commit a person acquitted on the grounds of insanity at the time the act was committed, and section 67 prescribing the only mode by which he may be released from custody, violates both the State and Federal Constitutions, in that—

*First.* No provision is made for giving the persons so acquitted notice or an opportunity to be heard, or requiring the question of his insanity at that time to be inquired into. That on the contrary the Court is empowered "in its discretion," without any finding of facts in respect to his mental condition, to commit him to the Hospital for an indefinite period of time.

*Second.* That not only is there an absence of any provision by which in a judicial proceeding his mental condition can at any time thereafter be inquired into, but by express language he is deprived of his constitutional right to the writ of *habeas corpus* or any other remedial writ, the sole power to grant relief being conferred upon the Legislature.

These contentions, it must be conceded, present serious questions involving the liberty of the citizen and his constitutional rights. The right and duty of the State to provide for the care and treatment of its insane with such confinement and restraint of their liberty as may be necessary for that purpose is conceded. It is made the duty of the General Assembly to do so. Const., Art. XI, sec. 10. It is also conceded that the State may, pursuant to general laws, and after proper judicial proceedings, confine insane persons for their

own protection and that of other persons. "The State, in respect to the care of the insane, owes a duty to these unfortunate people as well as to the public, * * * and undoubtedly has the right to provide for the involuntary confinement of the harmlessly insane in order that proper medical treatment may be given and a cure effected." Tiedeman Lim. Police Power, 106. It is also true that to meet sudden emergencies and prevent either self-destruction or injury or harm to other persons an insane person may be restrained temporarily without any adjudication of his insanity. The writers and courts have not undertaken to define the limitations of the power which the State has to deal with these unfortunate people, except by the announcement of general principles essential to their welfare and the protection of the public. We do not propose to enter upon a discussion of this delicate subject. It is discussed with ability by Mr. Tiedeman in his work on Limitations of Police Power, chap. 5. See also, Buswell on Insanity, p. 33. A very different question is presented when the Legislature undertakes to confer upon courts discretionary power to confine persons in asylums or hospitals and makes no provision for notice or adjudication before the order for confinement or for review of such discretion after the person is committed. It is well settled that a person acquitted by a jury upon the ground of insanity existing at the time of the commission of the act is entitled to all of the protection and constitutional rights as if acquitted upon any other ground. He enters his plea and upon issue joined by the State puts himself upon his country. "It is probably the rule of law in every civilized country that no insane man can be guilty of a crime and hence cannot be punished for what would otherwise be a crime. * * * Insanity when it is proven to have existed when the offense was committed constitutes a good defense, and the defendant is entitled to an acquittal. If the person is still insane, he

*In re* BOYETT.

can be confined in an asylum until his mental health is restored when he will be entitled to his release, like any other insane person." Tiedeman, 110.   *Campbell, J.,* in *Underwood v. People,* 32 Mich., 1, 20 Am. Rep., 633, says: "There can be no reason to doubt the propriety of making provision to secure such unfortunate persons protection and care in such a way as to prevent them from injuring or being injured if they are dangerous or in need of seclusion.   The State has an ultimate guardianship over *non compotes* in cases where it is necessary.   But inasmuch as such authority can only exist over those who are thus disqualified, the power of determining their condition is one of great importance and one which especially involves judicial oversight.   In this country, where all legislation must be within constitutional limits and does not reach the full parliamentary range, private liberty can never be subjected to the mere discretion of any person.   No one can be deprived of his liberty without due process of law.  `*   *   *   But a more serious difficulty is in the nature of the proceedings themselves.   In the first place the prisoner is sent into confinement without any legal investigation into his mental condition at that time, when he may be perfectly safe and when, having been acquitted, he is entitled to all the privileges of an innocent man.   *   *   * Neither Judge nor expert has any power under our Constitution to select his own means and process of inquiry and pass *ex parte* upon the liberty of citizens."   *Dowdell, Petitioner,* 169 Mass., 387.   *In re Lambert,* (Cal.), 55 L. R. A., 856, 86 Am. St. Rep., 296, it is said: "An order for the commitment of a person to an insane hospital is essentially a judgment by which he is deprived of his liberty, and it is a cardinal principle of English jurisprudence that before any judgment can be pronounced against a person there must have been a trial of the issue upon which the judgment is given."   In *State v. Billings,* 55 Minn., 467, 43 Am. St.

Rep., 525, the Court says: "While the State should take charge of such unfortunates as are dangerous to themselves and to others, not only for the safety of the public but for their own amelioration, due regard must be had to the forms of law and to personal rights. To the person charged with being insane to a degree requiring the interposition of the authorities and the restraint provided for, there must be given notice of the proceeding and also an opportunity to be heard in the tribunal which is to pass judgment upon his right to his personal liberty in the future." The statute under which the defendant was committed to an asylum in that case was in several respects similar to ours. The Court declared it void. It is true that it is provided that the person acquitted is to be kept in "custody for treatment and cure." The fatal infirmity in the statute is that the power to commit is vested in the Court to be exercised "in its discretion." No provision is made for notifying the person whose liberty is involved, nor is the Court required to make any investigation either by itself, by the examination of witnesses, by calling to its aid medical experts or otherwise. The order of his Honor expressly recites in the language of the act that, "It is therefore ordered and adjudged by the Court in the exercise of its discretion." We approve the language of the Court in *People v. Sanatorium,* 34 N. Y. App. Div., 363. "No matter what may be the ostensible or real purpose in restraining a person of his liberty, whether it is to punish for an offense against the law or to protect the person from himself or the community from apprehended acts, such restraint cannot be made permanent or of long continuance unless by due process of law." It is not necessary to discuss the question what is "due process of law" or to adopt any of the various definitions thereof; there is here, in no possible aspect, anything approaching the essential requirements of due process of law. An examination of the testimony in

*In re* BOYETT.

the case sent up as a part of the record, and his Honor's remarks to the jury show that he strongly and properly disapproved of the verdict. We are quite sure that his Honor, in strict compliance with the statute, exercised a sound discretion, but the difficulty lies in the fatal infirmity of the statute. As is well said, "The constitutional validity of law is to be tested not by what has been done under it, but by what may, by its authority, be done. The Legislature may prescribe the kind of notice and the mode in which it shall be given but it cannot dispense with all notice." *Stuart v. Palmer,* 74 N. Y., 183, 30 Am. Rep., 289. Doubtless the Legislature in its effort to deal with a difficult and embarrassing condition existing in the State respecting the care for that class of persons called criminal insane, and looking to legislation in other States upon the subject, enacted the statute without due regard to the constitutional limitations upon its power. The Court, in *Underwood v. People, supra,* thus accounts for a similar statute enacted by the General Assembly of Michigan: "It is a result of the dangers which have been multiplied by the absurd lengths to which the defense of insanity has been allowed to go under the fanciful theories of incompetent and dogmatic witnesses. * * * No doubt many criminals have escaped justice by the weight foolishly given by credulous jurors to evidence which their common sense should have disregarded. But the remedy is to be sought by correcting false notions and not by destroying the safeguards of private liberty." It may be that the wisdom of the Legislature will find, within constitutional limitations, a remedy for the objectionable features of the statute. We do not wish to be understood as saying that a person acquitted of a grave crime upon the ground of insanity may not be detained for a reasonable time, so that by some appropriate proceedings the condition of his mind may, either under the direction of the Judge presiding or some other judicial officer, or commission,

be examined into for the purpose of ascertaining whether his own safety and that of other persons, or the public generally, requires that he be committed to the hospital for treatment and care. It is well settled that it is not necessary that a jury trial be had—it is sufficient if the inquiry be had in some way by some tribunal conforming to the constitutional requirement of due process of law. *Black Hawk v. Springer,* 58 Iowa, 417, 16 Am. & Eng. Ency., 599; *Nobles v. Georgia,* 168 U. S., 398. There is, however, another and equally fatal objection to the statute. Section 67 provides that a person acquitted of a capital felony and committed to the Hospital cannot be released except by an act of the Legislature. It is a fundamental principle that every person restrained of his liberty is entitled to have the cause of such restraint inquired into by a judicial officer. The judicial department of the government cannot by any legislation be deprived of this power or relieved of this duty. It must afford to every citizen a prompt, complete and adequate remedy by due process for every unlawful injury to his person or property. This is absolutely essential to a constitutional government. The Legislature may make laws, prescribe rules of action and provide remedies not provided by the Constitution, the judiciary alone can administer the remedy. It is inconceivable to the mind of an American citizen at all familiar with the fundamental principles of our system of government how it can be possible that a person restrained of his liberty must await the action of the Legislature before he can have the cause thereof inquired into.

In *Doyle, Petitioner,* 16 R. I., 537, 5 L. R. A., 359, 27 Am. St. Rep., 759, the Court held that a statute which permitted a person to be committed to an insane asylum and detained until discharged by a commission appointed by a Justice of the Supreme Court was invalid. The principle upon which the decision is based is thus stated: "Such com-

*In re* BOYETT.

mission, however, is to be appointed not at the instance of the person confined but only on application of some *other* person. * * * Inasmuch as the person confined cannot himself initiate the proceeding or take any part in it when initiated by another, 'the effect of the act is to deprive the person of his liberty without due process of law.' Notwithstanding the express provisions of the act, the Court granted the writ of *habeas corpus.*" The Supreme Court of Michigan commenting upon a somewhat similar statute, says: "It practically leaves the liberty of the person confined to depend upon the uncontrolled pleasure of the inspectors." It will be observed that no duty is imposed upon the Legislature to inquire into the mental condition of persons confined under the statute, or to take any notice of or action in regard to them. While this provision is invalid, and does not prevent the application for or relieve the Judge of the duty to issue the writ of *habeas corpus* for the purpose of inquiring into the cause of the detention of the petitioner, it does not follow that he would be entitled to his discharge if committed in accordance with a valid law. Notwithstanding the invalidity of the statute under which the petitioner is committed, if it appeared from the return of the superintendent of the hospital, or the evidence before the Judge hearing the cause upon the return of the writ, that the petitioner was then insane and that he was a fit subject for restraint in the asylum or hospital, it would be his duty to direct his detention for a reasonable time to the end that proceedings should be had before the Clerk of the Superior Court as prescribed by section 15, chap. 1, Acts 1899. Whatever power the courts may have possessed to deal with insane persons under their general chancery jurisdiction, is now regulated by statute, and we find no authority for the admission of insane persons into State hospitals otherwise than as prescribed by the statute. There can be no doubt of the duty and power of the Court to

issue the writ of *habeas corpus* when applied for in accordance with statutory provisions. Buswell on Insanity, 30; *Palmer v. Judge,* 83 Mich., 528; *Le Donne, Petitioner,* 173 Mass., 552. The Judge does not find any fact in regard to the mental condition of the petitioner at this time. He sends to this Court the affidavit of Dr. Rogers, the physician in charge of the Hospital for the Dangerous Insane, in which he says that he has made a careful study and examination of the petitioner, and that in his opinion he is now sane. In this condition of the record the cause should be remanded to his Honor *Judge Ferguson* with direction to ascertain the mental condition at this time of the petitioner. If he shall find upon an examination that his mental condition is such that he should be confined in the Hospital, he will certify the same to the Clerk of the Superior Court of Lenoir County, who will proceed, after notice to the petitioner and inquiry made as provided by section 15, chap. 1, of the Acts of 1899, to make such orders as shall be proper in the premises. Buswell on Insanity says: "In cases where a person, whether sane or insane, is detained or confined as a lunatic without authority of law, it appears that such person is entitled to be brought into Court upon a writ of *habeas corpus* in order that the question of the legality of his detention may be inquired into. But it is necessary that the affidavit should show that the detained person is not a dangerous lunatic and that he is in a fit state to be removed and the Court may, if necessary, enlarge the time for making the return." If his Honor shall find it more convenient, he may transfer the cause to the Judge holding the courts of the district who will proceed in the cause as herein directed. Let this order be certified to *Judge Ferguson* and to J. S. Mann, Esq., Superintendent of the Hospital for the Dangerous Insane.

Remanded to Judge for further findings.