IN THE MATTER OF FLORA ELIZABETH WILSON.

(Filed 10 July 1962.)

**1. Insane Persons § 1—**

An order committing a person to a mental hospital for observation and treatment does not create a presumption of mental incapacity. G.S. 122-46.

**2. Same; Constitutional Law § 23—**

An order committing a person to a mental hospital permanently or indefinitely deprives him of his liberty within the purview of constitutional safeguards, and a person may not be so deprived of his liberty except by judgment rendered in accordance with due process of law, which implies an opportunity to be heard and to prepare for the hearing. Constitution of North Carolina, Art. I, § 17; Fourteenth Amendment to the Federal Constitution.

**3. Same—**

Where a person has been committed to a mental hospital for observation and treatment, G.S. 122-46, the clerk may not thereafter upon the report of the hospital superintendent order the commitment of such person for an indefinite time without giving such person notice and an opportunity to be heard. If G.S. 122-46.1 does not contemplate notice and a hearing, it is unconstitutional, however under the 1957 amendment a hearing may be had under G.S. 35-3, 35-4 and 35-4.1. Under this procedure a guardian *ad litem* should be appointed so that the person committed will be bound by the judgment if the issue is found adverse to him.

BOBBITT, J., dissenting in part.

On *certiorari* to review an order entered by *Copeland, S.J.*, in a *habeas corpus* proceeding heard at the August 1961 Term, WAKE Superior Court.

The record discloses that Flora Elizabeth Wilson is confined in the State Hospital at Butner under an order of indeterminate duration entered by the Clerk Superior Court of Durham County. The commitment proceeding was initiated on March 21, 1959, by an affidavit of

Alfred R. Wilson, Jr., stating, "That Mrs. Flora P. Wilson is (a mentally disordered) person in my opinion and in need of treatment in a proper hospital; . . . that she will not of her own free will permit an examination by physicians." On the day the affidavit was filed the clerk issued process to the sheriff: "Upon the foregoing affidavit, you are hereby ordered to arrest the above named alleged (mentally disordered) person and her safely keep until proper adjudication can be had." On April 11, 1959, the clerk issued a notice to Mrs. Wilson that a hearing would be held on April 13, 1959. The clerk caused Mrs. Wilson to be examined by R. A. Horton and Hans Lowenbach, physicians, each of whom made affidavit that Mrs. Wilson is suffering from mental disease, epilepsy or inebriety and is a fit subject for admission to a hospital. The record does not contain an order of commitment, but the record recites that Mrs. Wilson was committed to the State Hospital at Butner on April 21, 1959.

On June 24, 1959, the Superintendent of State Hospital at Butner notified the Clerk: "It is my opinion she is mentally disordered and in need of further observation and treatment." The clerk ordered "an observation for four months in addition to the sixty days heretofore ordered." On October 13, 1959, the Superintendent reported: "Her condition has been essentially the same. I recommend permanent commitment." The clerk entered an order on October 14, 1959, that Mrs. Wilson "Be retained in the State Hospital at Butner for care and treatment as prescribed by law."

From time to time since the order of permanent commitment Mrs. Wilson has been released on parole for short periods, usually in the custody of her son. Nothing of note is reported to have occurred during the parole periods.

On June 26, 1961, Mrs. Wilson's daughter filed affidavit that her mother was not a mentally disordered person, not a fit subject for care and treatment in a mental hospital, and that her commitment and detention were unlawful. Upon this affidavit Judge Bickett issued a writ of *habeas corpus*, returnable at Raleigh, North Carolina, on July 14, 1961. Judge Copeland conducted a hearing on the writ at which two physicians, specialists in psychiatry, testified that in their opinion Mrs. Wilson is not psychotic and not dangerous to herself or others. Lay testimony to the same effect was offered. The respondent, Superintendent of the State Hospital at Butner, identified and presented to Judge Copeland the entire clinical file kept at the hospital, including the results of many staff conferences and findings indicating that Mrs. Wilson was in need of confinement and treatment.

Judge Copeland made the following findings and order:

"1. That the petitioner, Flora Elizabeth Wilson, at the time of her commitment, was a mentally disordered person and a fit subject for care and treatment at a mental hospital.

"2. That on the date of this hearing, the petitioner, Flora Elizabeth Wilson, is a mentally disordered person and a fit subject for care and treatment at a mental hospital and her being at large could be dangerous to herself and others when out of the control and custody of the hospital.

"3. That the petitioner, Flora Elizabeth Wilson, was committed and detained in accordance with all the statutory requirements.

"4. That all the orders issued by the Clerk of Superior Court of Durham County are found to be lawful in every respect, and not in violation of the Constitution of North Carolina or the Constitution of the United States.

"5. The Court determines that the North Carolina Statutes under which the petitioner was committed are lawful in every respect and not in violation of the Constitution of the State of North Carolina:

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that the petition for a writ of *Habeas Corpus* filed in this case be, and the same is hereby dismissed and the petitioner is remanded to the John Umstead Hospital, Butner, North Carolina, for further care and treatment, as provided by law."

Counsel for Mrs. Wilson filed detailed exceptions to the findings of fact, conclusions, and the order remanding her to the hospital, etc. *Certiorari* was granted to review the order in the light of the errors assigned.

*T. W. Bruton, Attorney General, Richard T. Sanders, Staff Attorney, for the State.*

*Louis Rabil, Douglas A. Clark, Washington, D. C., Michael Rabil, Malcolm B. Seawell, Raleigh North Carolina for petitioner appellant.*

HIGGINS, J. Mrs. Wilson, by *habeas corpus*, challenges the legality of her restraint upon the ground the clerk's order committing her to the State Hospital at Butner violated her rights under Article I, Section 17, Constitution of North Carolina, and under the Due Process Clause of the 14th Amendment to the Constitution of the United States. The original order of commitment for 60 days observation and treatment and the follow-up order for additional observation and treatment for four months have terminated. However, the permanent order entered on October 14, 1959, is the basis of her present restraint.

The clerk and the hospital authorities have been proceeding under G.S. 122-46. In determining the validity of the final order the previous orders for observation and treatment do not create any presumption of mental incapacity. "Neither the institution of a proceeding to have an alleged mentally disordered person committed for observation as provided in this section, nor the order of commitment by the clerk as provided in this section, shall have the effect of creating any presumption that such person is legally incompetent for any purpose. Provided, however, that if a guardian or trustee has been appointed . . . under G.S. 35-2 or 35-3, the procedure for restoration to sanity shall be as is now provided in G.S. 35-4 and 35-4.1."

The foregoing quotation was by amendment to G.S. 122-46, enacted by the General Assembly at the 1957 Session, effective June 10th of that year. The method of showing restoration under G.S. 35-4 is by petition of any friend or relative alleging sanity, filed before the clerk of the superior court. "Whereupon the clerk shall issue an order, . . . to summon a jury of six freeholders to inquire into the sanity of the alleged sane person . . . The petitioner may appeal from the finding of said jury to the next term of the superior court . . . when the matter . . . shall be regularly tried *de novo* before a jury."

The amendment of 1957 now provides that one committed under G.S. 122-46 may be restored to sanity under G.S. 35-3, 35-4 and 35-4.1. Failure of any such previous tie-in is reflected in a number of decisions of this Court. *In re Harris*, 241 N.C. 179, 84 S.E. 2d 808; *In re Cook*, 218 N.C. 384, 11 S.E. 2d 142; *In re Sylivant*, 212 N.C. 343, 193 S.E. 422; *In re Chase*, 193 N.C. 450, 137 S.E. 305. The amendment removes from G.S. 122-46 the objection that a traditional trial by jury is not provided as a means of determining the issue of sanity. Apparently the requirement that a guardian be appointed and made a party is to give binding effect to an adverse verdict by the jury.

The record indicates that Mrs. Wilson was not present before the clerk at the time the final order of commitment was entered. The record indicates she was neither given notice nor an opportunity to be heard. There is nothing to indicate that she was advised of the medical reports, nor was she given opportunity to challenge the findings which the clerk appears to have used as the only basis for his commitment order. True, G.S. 122-46.1 provided: "Upon the basis of this report the clerk . . . is authorized to order said person discharged or to order him to remain in the hospital as a patient *as the facts may warrant.*" (emphasis added)

Does the term "as the facts may warrant," confine the scope of the clerk's inquiry to the report, or does it contemplate notice and a hearing? If notice and hearing, the requirement was not met. If it does

not contemplate a hearing, Mrs. Wilson is restrained of her liberty without due process of law. Article I, Section 17, Constitution of North Carolina; 14th Amendment to the Constitution of the United States. "Due process of law implies the right and opportunity to be heard and to prepare for hearing." *State v. Wheeler*, 249 N.C. 187, 105 S.E. 2d 615; *In re Gupton*, 238 N.C. 303, 77 S.E. 2d 716; *Eason v. Spence*, 232 N.C. 579, 61 S.E. 2d 717; *Mooney v. Holohan*, 294 U.S. 103; *Simon v. Craft*, 182 U.S. 427; *Holden v. Hardy*, 169 U.S. 366, 16 C.J.S. 578. "An order for the commitment of a person to an insane hospital is essentially a judgment by which he is deprived of his liberty, and it is a cardinal principle of English jurisprudence that before any judgment can be pronounced against a person there must have been a trial of the issue upon which the judgment is given." *In re Boyett*, 136 N.C. 415, 48 S.E. 789. The guarantees imbedded in the Constitution are not subject to modification or repeal by the legislature. *State v. Mitchell*, 202 N.C. 439, 163 S.E. 581.

By reason of the lack of notice to Mrs. Wilson and an opportunity for her to be heard on the question of her sanity, the order of commitment under which she is now restrained violated her constitutional rights. Of course, detention of an alleged insane person for a short period of time pending observation is permitted. However, the judgment that Mrs. Wilson is lawfully detained and that she is now insane exceeds the scope of the *habeas corpus* hearing.

While motion may be made in the commitment proceeding to vacate the order now in effect, the result would probably be another hearing after notice. As a more practical approach, however, a guardian may be appointed upon the basis of the superintendent's certificate as provided in G.S. 35-3. A petition, on the application of some relative or friend, may be filed invoking the procedure under G.S. 34-4 and have a jury pass upon Mrs. Wilson's sanity. The guardian should be a party to the end the finding of the jury, if adverse, may have finality until a material change in condition occurs.

The order under review is

Reversed.

BOBBITT, J., dissenting in part. The factual question or issue is whether plaintiff is now a mentally disordered person in need of hospital custody and care. In my view, she is entitled to have this factual question or issue passed upon by a jury in accordance with the procedure prescribed in G.S. § 35-4 upon her own motion or upon motion of a relative or friend.

The controversy relates solely to the continued confinement of petitioner. No guardian or trustee has been appointed under G.S. § 35-2

and § 35-2.1 or under G.S. § 35-3. Thus, the termination of an existing guardianship or trusteeship is in no way involved.

In my opinion, it would be inappropriate to appoint a guardian on the ground of her alleged mental disorder to act for petitioner in a proceeding in which she asserts her competency. Hence, I dissent from the suggestion in the opinion that the appointment of such guardian for petitioner would be appropriate.