IN RE: JOHN J. TEW, JR.

No. 7110SC184

(Filed 28 April 1971)

**Insane Persons § 11— release of person acquitted of crime because of insanity — certificate of State Hospital superintendents**

Portion of G.S. 122-86 providing that no judge issuing a writ of *habeas corpus* upon application of a person committed to a hospital under the provisions of G.S. 122-84 "shall order his discharge until the superintendents of the several State Hospitals shall certify that they have examined such person and find him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public," *held* not violative of due process.

Judge BRITT dissenting.

ON *certiorari* to review the order of *Hall, Superior Court Judge,* 3 November 1970 Session of WAKE County Superior Court.

Petitioner, through his application for a writ of *habeas corpus,* seeks his unconditional release from Dorothea Dix Hospital. Petitioner was committed to Dorothea Dix Hospital on 17 September 1965 pursuant to an order signed by Judge Leo Carr following an inquisition with regard to the mental condition of petitioner. The inquisition was held as a result of the acquittal by reason of insanity of the petitioner of the capital charge of murdering his former wife.

The trial judge issued a writ of *habeas corpus* directing the Superintendent and Director of the Forensic Unit of Dorothea Dix Hospital to bring petitioner before the court for a hearing on the restraint of petitioner. A hearing was held on 5 November 1970 and the trial judge made the following findings of fact and conclusions of law:

"(1) That in 1965 the petitioner was acquitted of the capital felony of murder by reason of insanity, and was thereafter lawfully committed to the Dorothea Dix Hospital pursuant to G.S. 122-84, by order of Judge Leo Carr entered in Harnett County on September 17, 1965;

(2) That since his commitment the petitioner received excellent care and treatment; that since February 1969 he has worked in the supply room of the hospital, has been in the presence of men and women, and has not at any time shown any disposition to harm himself or anyone else;

(3) That the petitioner's mental condition has considerably improved since his commitment, his drug treatment having been discontinued over two years ago, and recent psychiatric examinations by qualified experts reveal no evidence of any mental disorder;

(4) That the petitioner has now been restored to his right mind, is now sane, and his mental condition is not now such as to render him dangerous to himself or other persons;

(5) That the petitioner has had symptoms of paranoia, which are now in remission; and the Superintendent of Dorothea Dix Hospital does not recommend his unconditional release;

(6) That the Superintendents of the several State Hospitals have not certified that they have examined the petitioner and found him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public;

Upon the foregoing facts the Court concludes that the petitioner is now sane, and his detention is no longer necessary for his own safety, or the safety of the public; and his further detention can serve no useful purpose; and that while the Court has some doubt as to the validity of the proviso of G.S. 122-86, it is the Court's opinion that this Court is not authorized to discharge the petitioner until after the Superintendents of the several State Hospitals have certified that they have examined him and found him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public;"

The trial judge then ordered that petitioner be remanded to the custody of Dorothea Dix Hospital. To review this order, petitioner applied to this Court for a writ of *certiorari*, which was allowed on 11 December 1970.

*The State represented by Eugene Boyce.*

*Yarborough, Blanchard, Tucker & Denson by Irvin B. Tucker, Jr., for petitioner appellant.*

CAMPBELL, Judge.

The sole issue presented on this appeal is the validity of the portion of G.S. 122-86 providing that no judge, issuing a writ of *habeas corpus* upon application of a person committed to a hospital under the provisions of G.S. 122-84, "shall order his discharge until the superintendents of the several State Hospitals shall certify that they have examined such person and find him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public."

Petitioner contends that the provision of the statute requiring a certificate from the superintendents of the several State Hospitals is violative of due process of law as guaranteed by the Federal and State Constitutions. We do not agree. Clearly, the General Assembly has the power to establish mental institutions and rules and regulations for the care and custody of the insane. *State v. Craig,* 176 N.C. 740, 97 S.E. 400 (1918); see also N. C. Const. art. XI, §§ 7 & 10.

In the case of *In re Boyett,* 136 N.C. 415, 48 S.E. 789 (1904), the petitioner Boyett had been tried for the capital offense of murder of his wife. On his trial he was acquitted by the jury on the ground of insanity. The trial judge, without any inquisition of lunacy, committed Boyett to the hospital for the dangerous insane and ordered him retained there until discharged. In the Boyett *habeas corpus* proceeding, the statute authorizing the commitment was held to be invalid as not conforming to due process of law since Boyett had not been given notice or an opportunity to be heard before the commitment. Likewise, an attack was made for that there was no provision by which in a judicial proceeding his mental condition could be inquired into, and the sole power to grant relief was conferred upon the legislature. The court held that the proceeding was

In re Tew

invalid in both respects. In connection with the original commitment, Judge Connor for the court stated:

" . . . We do not wish to be understood as saying that a person acquitted of a grave crime upon the ground of insanity may not be detained for a reasonable time, so that by some appropriate proceedings the condition of his mind may, either under the direction of the Judge presiding or some other judicial officer, *or commission,* be examined into for the purpose of ascertaining whether his own safety and that of other persons, or the public generally, requires that he be committed to the hospital for treatment and care. It is well settled that it is not necessary that a jury trial be had—it is sufficient if the inquiry be had in some way by some tribunal conforming to the constitutional requirement of due process of law. . . . " (Emphasis added.)

In the instant case Tew was not committed until after an inquisition as to his mental condition. Thus, this aspect of the *Boyett* case was rectified. The attack now being made is under the second aspect of the *Boyett* case, namely, the release from the hospital of a person lawfully committed.

In enacting the provision now complained of, the General Assembly has merely followed the guidelines laid down in the *Boyett* case, *supra.* The "superintendents of the several State Hospitals" have been designated to determine whether the person committed is sane and "that his detention is no longer necessary for his own safety or the safety of the public." The superintendents thus constitute a commission as suggested in the *Boyett* case, *supra.* If, as suggested by the *Boyett* case, *supra,* a commission could make the determination at the time of the initial commitment proceeding and thus constitute due process, the same proceeding should be sufficient to constitute due process in determining whether or not the commitment should terminate.

While the passage of time since the enactment of G.S. 122-86 and the increase in the number of superintendents of the several State Hospitals increases the difficulty of procuring the necessary certificate, this in no way violates due process. Any change in the procedure is a matter for the legislative branch of

the government and not the judicial. We think the proceeding as now enacted provides due process.

Other states, having similar provisions, have considered this same problem and have upheld the requirement of a certificate, either from several heads of institutions or the head of the institution where the mentally ill person is committed, before the mentally ill person can be released. See *In re Clark,* 86 Kans. 539, 121 P. 492 (1912); *Parker v. People,* 108 Colo. 362, 117 P. 2d 316 (1941); *Bartosik v. People,* 155 Colo. 219, 393 P. 2d 571 (1964); *Blalock v. Markley,* 207 Va. 1003, 154 S.E. 2d 158 (1967); and *Rogers v. State,* 459 S.W. 2d 713 (Tex. Civ. App. 1970). For an annotation of various views and situations see 95 A.L.R. 2d 54 (1964).

Petitioner does not allege and makes no attempt to show that the failure to obtain the required certificate was the result of arbitrary or capricious action on the part of the superintendents.

For the reasons stated, the order of the trial judge remanding petitioner to the custody of Dorothea Dix Hospital is

Affirmed.

Judge GRAHAM concurs.

Judge BRITT dissents.

Judge BRITT dissenting.

The first sentence of G.S. 122-86 reads as follows: "No person acquitted of a capital felony on the ground of mental illness, and committed to the hospital designated in § 122-83 shall be discharged therefrom unless an act authorizing his discharge be passed by the General Assembly." The Supreme Court of North Carolina in the case of *In re Boyett,* 136 N.C. 415, 48 S.E. 789 (1904), in holding this proviso unconstitutional, said:

It is a fundamental principle that every person restrained of his liberty is entitled to have the cause of such restraint inquired into by a judicial officer. The judicial department of the government cannot by any legislation be deprived of this power or relieved of this duty. It must

afford to every citizen a prompt complete and adequate remedy by due process for every unlawful injury to his person or property. This is absolutely essential to a constitutional government. The Legislature may make laws, prescribe rules of action and provide remedies not provided by the Constitution, the judiciary alone can administer the remedy.

Thereafter, the General Assembly enacted what is now the last sentence of G.S. 122-86 reading as follows: "No judge issuing a writ of *habeas corpus* upon the application of such person shall order his discharge until the superintendents of the several State hospitals shall certify that they have examined such person and find him to be sane, and that his detention is no longer necessary for his own safety or the safety of the public." Petitioner contends this proviso is also unconstitutional as violative of "due process" and I agree with the contention.

It appears to me that by enacting the last quoted proviso, the General Assembly merely substituted another nonjudicial group to pass upon the legality of a person's detention under G.S. 122-86. Our state and federal constitutions guarantee our citizens "due process of law"; this term is defined in Black's Law Dictionary, Fourth Edition, as "law in its regular course of administration through courts of justice."

Passing upon the mentality of a person is a complex task and in performing this duty, the courts should rely heavily upon persons who are specially trained in the field of mental health. Nevertheless, the courts should not be deprived of the power and duty to determine ultimately if a person is legally and properly detained.

I vote to reverse the order appealed from and to remand this cause to the superior court for further appropriate proceedings.