STATE OF NORTH CAROLINA v. JESSE LEWIS

No. 717SC124

(Filed 26 May 1971)

1. Criminal Law § 29— inquiry into competency of defendant — request by defense counsel

It was proper for defendant's counsel to request the court to conduct an inquiry to determine whether defendant had sufficient mental capacity to plead to the indictment and conduct a rational defense.

2. Criminal Law § 29— mental competency to plead — determination by judge or jury

Under G.S. 122-83 and G.S. 122-84, the question of whether the defendant has sufficient mental capacity to plead to the indictment and conduct a rational defense may be determined by the court with or without the aid of a jury prior to the trial of defendant for the crime charged.

3. Criminal Law § 29— incompetency to stand trial — felonious breaking and entering — commitment under G.S. 122-84

It was proper for the court to proceed under G.S. 122-84 in committing to a State hospital a defendant accused of felonious breaking and entering who had been found incompetent to stand trial.

4. Criminal Law § 29— commitment of defendant found incompetent to stand trial

A defendant who has been found mentally incompetent to plead and stand trial may be committed to a State hospital under G.S. 122-84 without a finding that "the mental condition or disease of such

---

State v. Lewis

---

person is such as to render him dangerous either to himself or other persons, and that his confinement for care, treatment and security demands it," which applies to commitment of a person acquitted of crime.

**5. Criminal Law § 29— competency hearing for accused — due process**

No rules or procedures are provided by G.S. 122-83 or G.S. 122-84 as to how the judge shall conduct the inquisition to determine whether a person accused of crime is incompetent to plead, but due process must be observed.

**6. Criminal Law § 29— commitment of defendant unable to stand trial**

Provisions of G.S. 122-83 and G.S. 122-84 are not in irreconcilable conflict.

**7. Criminal Law § 29— incompetency to stand trial — failure of clerk to act — action by judge**

Failure of the clerk to institute proceedings under G.S. 122-91 for commitment of a defendant who is mentally incompetent to stand trial does not prevent a judge of the superior court from proceeding under the provisions of G.S. 122-84 in proper cases.

**8. Criminal Law § 29— incompetency to plead — commitment to hospital — necessary findings**

In order for a person accused of crime to be committed to a State hospital under the provisions of G.S. 122-84, the judge or jury must first ascertain by due course of law that such person is "charged with" or "accused of" the commission of a crime of the nature referred to in the statute and that he is without sufficient mental capacity to undertake his defense at the time of arraignment and for that reason cannot be put on trial.

**9. Criminal Law § 29— incompetency to stand trial — effect of commitment to State hospital**

Judgment committing defendant found mentally incompetent to stand trial to a State hospital operates to restrain defendant only until he is mentally fit for trial or other disposition is made in the premises.

APPEAL by defendant from *Cohoon, Judge,* 5 October 1970 Session of Superior Court held in NASH County.

A bill of indictment was returned against the defendant charging him with the crimes of breaking and entering with intent to steal, larceny, and receiving stolen goods knowing them to have been stolen. For reasons not necessary to this appeal [see the records, briefs, and opinions in the case of *State v. Lewis,* 1 N.C. App. 296, 161 S.E. 2d 497 (1968); *State v. Lewis,* 274 N.C. 438, 164 S.E. 2d 177 (1968); and *State v. Lewis,* 7 N.C. App. 178, 171 S.E. 2d 793 (1970), *cert. denied, and*

*purported appeal as of right dismissed,* 276 N.C. 328], the defendant was called upon to plead to the above bill of indictment which was returned against him at the January 1955 Term of Superior Court held in Nash County.

Before pleading, Samuel S. Woodley, court-appointed attorney for the defendant, filed a written motion dated 1 June 1970 in which he asserted that the defendant had been sent to Cherry Hospital by Judge Cowper in February 1967 and that a report from Cherry Hospital dated 12 April 1967 stated that the defendant was found to be competent to stand trial. In this motion defendant's attorney requested "that a formal hearing be conducted into the competency of this Defendant for trial before he is required to enter a plea or a plea is entered in his behalf, and that at such hearing the Court make such additional investigation and findings of fact as necessary to determine whether or not this Defendant should be committed to a State Hospital as provided by G.S. 122-83, G.S. 122-84, and G.S. 122-85."

Under date of 1 June 1970 and pursuant to G.S. 122-91, Judge Copeland, a superior court judge, ordered the defendant again committed to the State hospital at Goldsboro (Cherry Hospital) for a period of 60 days observation and examination.

On 5 October 1970 Judge Cohoon issued a notice to the defendant (which was served upon him the same date) that he would conduct a hearing on 8 October 1970 to determine whether the defendant was capable of pleading to the bill of indictment.

On 8 October 1970, in open court, after the bill of indictment was read to the defendant, his counsel again made a motion that the defendant not be required to plead to the bill of indictment pending a hearing on the competency of the defendant to stand trial. The motion was allowed.

After hearing the evidence offered, Judge Cohoon entered a "Judgment and Order" which included the substance of the pertinent testimony of the witnesses. This judgment and order is as follows:

"The above entitled case being called at this term for trial and upon being arraigned and inquired as to his plea the defendant through his court-appointed attorney, Samuel S. Woodley, moved that he not be permitted to plead for

the reason that at this time the defendant did not have the capacity to comprehend his position nor to understand the nature and object of the proceedings against him nor to conduct his defense in a rational manner nor to cooperate with his counsel to the end that his defense might be interposed, the same being due to mental incapacity on the part of the defendant.

Upon the motion being made a hearing was conducted by the undersigned, there being offered testimony from Dr. I. Ritenis of Cherry Hospital and Dr. Billy W. Royal of Durham, together with two exhibits offered in evidence marked Defendant's Exhibit No. 1 and Defendant's Exhibit No. 2. The Court finds as a fact that Dr. Ritenis and Dr. Royal are experts in the practice of medicine, specializing in psychiatry. The Court further finds that Dr. Royal has practiced psychiatry for two years at Dorothea Dix Hospital and since 1962 has been engaged in private practice in Durham and in services rendered the Edgecombe-Nash Mental Health Clinic in Rocky Mount, and that Dr. I. Ritenis graduated in 1955 from the Universitiy of Adelaide in South Australia and that he has since worked twelve years in psychiatry, that he obtained a diploma in psychological medicine from the Royal College of Physicians and Surgeons in London, England, in 1965, and obtained a medical degree from the University of Erlangen, Germany, in 1959, and that he has been working and practicing in forensic psychiatry at Cherry Hospital since November 1, 1969. That in the course of duties of Dr. Ritenis at Cherry Hospital he saw the defendant, examined him August 26, 1970, and observed and treated him intermittently until October 5, 1970, said Lewis being in the hospital for mental observation. That the forensic psychiatry field involves examination of patients for ability to participate in trials in court.

That from the findings and examination of the aforesaid Dr. Ritenis that the defendant is suffering from deepseated delusions as to identity, that his mental condition is such that the defendant does not at this time have the capacity to comprehend his position, to understand the nature and object of the proceedings against him, nor to conduct his defense in a rational manner, nor to cooperate with

his counsel with respect to the defense of the charges against him. That he had not observed any body chemistry changes in the defendant, did not consider that a condition with respect to blood sugar or cholesterol levels as having any relevancy with respect to the opinion which he formed concerning the defendant's lack of ability to participate in the defense of his trial.

That Dr. Royal observed the defendant in Nash County for approximately one and a half hours in April, 1969, being called for the purpose of determining whether or not the defendant was a medical doctor. That his report to the defendant's then attorney (not the attorney in this case) was confined to his findings with respect to whether or not the defendant was a medical doctor. That thereafter and after the trial the said doctor did furnish a written report which included additional matters other than the question as to whether the defendant was a medical doctor.

That based upon the findings of Dr. Ritenis, Dr. Royal is of the same opinion now as Dr. Ritenis to the effect that the defendant is unable to plead understandingly to the present charge against him or to comprehend his position or to conduct his defense in a rational manner or to cooperate with his counsel in said respect.

From the evidence offered in this hearing the Court finds as a fact that the defendant at this time is unable to plead to the bill of indictment charging him with felonious breaking and entering and larceny for that he does not have the capacity at this time to stand trial or to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, or to cooperate understandingly with his counsel with respect to his defense.

The Court further finds that the opinion of Dr. Ritenis is that the defendant is in need of further psychiatric treatment. The Court finds that he is in further need of psychiatric treatment.

IT IS, THEREFORE, ORDERED AND DECREED that the defendant be transported to Cherry Hospital in Goldsboro for further treatment as recommended and as provided in separate order attached to the commitment this day or-

dered issued in Case No. 68-CR-1059, and that he remain in said hospital after delivery until such time as the authorities of said hospital report to the Clerk of Superior Court of Nash County and to the Solicitor of the Seventh Judicial District and to the defendant's attorney, Samuel S. Woodley, Rocky Mount, N. C. (and that a copy of said report also be sent to Mr. Leon Henderson, Jr., Nashville, N. C., Attorney for the defendant in another case), to the effect that said defendant has improved to such condition that he is mentally capable to plead to the bill of indictment, confer with his counsel regarding his defense, and to stand trial upon the aforesaid felonious breaking and entering and larceny charges against him.

It is further directed that the authorities of said hospital do not release said defendant except upon a subsequent order of a Judge of the Superior Court for his return to trial as to the felonious breaking and entering charge or unless otherwise ordered for return to Nash County or elsewhere for hearing."

To the entry of and findings in the foregoing judgment and order, the defendant, in apt time, excepted and appealed to the Court of Appeals.

*Attorney General Morgan and Staff Attorney Covington for the State.*

*Battle, Winslow, Scott & Wiley, P. A., by Samuel S. Woodley for defendant appellant.*

MALLARD, Chief Judge.

[1, 2] It was proper for the defendant's counsel to request the court to conduct an inquiry to determine whether the defendant had sufficient mental capacity to plead to the indictment and conduct a rational defense. 2 Strong, N. C. Index 2d, Criminal Law, § 29; 21 Am. Jur. 2d, Criminal Law, § 64. And it was proper for the court to conduct an inquiry. *State v. Sullivan,* 229 N.C. 251, 49 S.E. 2d 458 (1948). Under G.S. 122-83 and G.S. 122-84, the question of whether the defendant had sufficient mental capacity to plead to the indictment and conduct a rational defense may be determined by the judge or he may submit the issue to a jury prior to the trial of de-

fendant for the crime charged. *State v. Propst,* 274 N.C. 62, 161 S.E. 2d 560 (1968).

The distinction between the test of the competency of a person to stand trial and the test of the mental responsibility in the commission of a crime is set forth in *State v. Propst, supra,* at page 70.

After the hearing the defendant insisted that he was competent to stand trial and requested his attorney to give notice of appeal. He then filed several written motions and requests that his present counsel be dismissed from the case. (Defendant had theretofore requested that his prior attorneys be dismissed, and his request had been allowed.) Thereafter, the defendant's counsel filed a petition bringing all these matters to the attention of the court and requested instructions from the court. Judge Cohoon acted on the request of defendant's attorney and entered the following order on 28 October 1970:

> "THIS CAUSE coming on to be heard before the undersigned Judge assigned to hold the Courts of the Seventh Judicial District upon motion of the Defendant's Court-appointed counsel, that the Defendant be brought before the Court and afforded a hearing in connection with the Defendant's Motion filed with the Court to dismiss his Court-appointed counsel; and the Court being of the opinion that the Defendant's appointed counsel, Samuel S. Woodley, Jr., is competent and capable of conducting the Defendant's defense and that he has acted in the Defendant's best interest in objecting to the Court's acceptance of any plea from the Defendant as to charges pending against him, for the reason that the Defendant is incompetent; and the Court being further of the opinion, in view of its previous finding that the Defendant is in fact incompetent and unable to plead or stand trial, that the Defendant is not, therefore, competent to determine who should represent him, nor to conduct his own defense, nor to determine what is in his best interest and instruct his appointed counsel with respect to his conduct of this case, so that any hearing afforded to this Defendant could serve no useful purpose.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Defendant's Motion to dismiss his Court-appointed counsel be and it is hereby denied; that Samuel S. Woodley, Jr., be and he is hereby retained as counsel for the Defendant, and is charged with the responsibility for the Defendant's defense; and that said attorney shall continue to conduct the Defendant's case as he, in his best professional judgment and opinion, deems to be in the best interest of this Defendant, without regard to the Defendant's instructions or requests to the contrary, for so long as the Defendant remains incompetent, as determined by the doctors and physicians charged with his care and treatment."

This appeal concerns itself only with that portion of the order committing the defendant to a State hospital for treatment until such time as he is competent to plead and stand trial. No contention is made in the defendant's brief that the evidence was insufficient to support the findings by the judge that the defendant was incapable of pleading to the bill of indictment. Defendant's attorney argues, however, that Judge Cohoon could not lawfully commit the defendant under G.S. 122-84 to a State mental institution without further finding, upon competent evidence, "that such commitment is in the defendant's best interest or that the protection of society demands it."

[3] Both the State and the defendant contend and argue that a person cannot be committed by a judge under the provisions of G.S. 122-83. (Defendant's counsel joins the State in this position on the oral argument, although in the motion he filed, he asserts that the defendant should be committed as provided by G.S. 122-83, G.S. 122-84, and G.S. 122-85. G.S. 122-85 relates to the committing of *convicts* who become mentally ill and is not applicable to the factual situation before us.) They both contend that when action is required in this connection, if the judge acts, he must proceed under the provisions of G.S. 122-84. It is noted that G.S. 122-83 applies to a person "charged with crime" while G.S. 122-84 is applicable to a person "accused of the crime of murder, attempt at murder, rape, assault with intent to commit rape, highway robbery, train wrecking, arson, or other crime," and this points out that one of the distinguishing provisions of the two statutes is the type of crime to which

it applies. Concerning this, see *State v. Craig,* 176 N.C. 740, 97 S.E. 400 (1918). The felony of breaking and entering with intent to steal is a crime importing serious menace to others, and it was proper in this case for the judge to proceed under G.S. 122-84. *State v. Craig, supra.* Under the assignments of error brought forward in the defendant's brief, it is not necessary for us to decide the question of whether the judge could have also proceeded under G.S. 122-83. The question is: Did he proceed properly under the provisions of G.S. 122-84?

In order to understand the question presented, it is necessary to look at the statutes involved. Both of the statutes now appearing as G.S. 122-83 and G.S. 122-84 were first enacted in 1899. Upon a casual reading, the two statutes appear to be in conflict with respect to what must be found in order for the judge to commit a mentally ill person who is charged with crime to a State mental hospital for detention, care and treatment but is found to be unable to plead to the bill of indictment. The question of whether the two statutes are irreconcilable does not appear to have been heretofore presented and decided.

G.S. 122-83 reads in pertinent part:

"All persons who may hereafter commit crime while mentally ill, and all who, being charged with crime, *are adjudged to be mentally ill* at the time of their arraignment, and *for that reason cannot be put on trial* for the crimes alleged against them, *shall be sent by the court* before whom they are or may be arraigned for trial, *when it shall be ascertained by due course of law* that such *person is mentally ill and cannot plead,* to Dorothea Dix Hospital, or to Cherry Hospital, and they shall be confined therein under the rules and regulations prescribed by the board of directors under the authority of this article, and they shall be treated, cared for, and maintained in said hospital. * * *" (Emphasis added.)

If the defendant could have been committed under G.S. 122-83, it is clear that the statute does not require a finding by the judge that the commitment is in the defendant's best interest or that the protection of society demands that the defendant be committed before sending such person to a State hospital.

The findings by Judge Cohoon that the defendant was unable to plead to the bill "for that he does not have the capacity

at this time to stand trial or to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, or to cooperate understandingly with his counsel with respect to his defense" in the context of the order are sufficient findings that the defendant was mentally ill at the time of arraignment and for that reason could not plead. The defendant's counsel does not contend otherwise in his brief.

Defendant's counsel argues and contends that because of some of the provisions of G.S. 122-84, Judge Cohoon did not make sufficient findings to permit him to order the defendant committed to the State hospital for psychiatric treatment.

There are three paragraphs in G.S. 122-84, reading as follows:

"When a person accused of the crime of murder, attempt at murder, rape, assault with the intent to commit rape, highway robbery, train wrecking, arson, or other crime, shall have escaped indictment or shall have been acquitted upon trial upon the ground of mental illness, or shall be found by the court to be without sufficient mental capacity to undertake his defense or to receive sentence after conviction, the court before which such proceedings are had shall detain such person in custody until an inquisition shall be had in regard to his mental condition. The judge shall, at the term of court at which such person is acquitted, cause notice to be given in writing to such person and his attorney, and, if in his good judgment it be necessary, to his nearest relative, naming the day upon which he shall proceed to make an inquisition in regard to the mental condition of such person. The judge shall cause such witness to be summoned and examined as he may deem proper or as the person so acquitted or his counsel may desire. At such inquisition the judge shall cause the testimony to be taken in writing and be preserved, and a copy of which shall be sent to the superintendent of the hospital designated in § 122-83. If upon such inquisition the judge shall find that the mental condition or disease of such person is such as to render him dangerous either to himself or other persons, and that his confinement for care, treatment, and security demands it, he shall commit such person to the hospital designated in § 122-83, to be kept in custody therein for treatment and care as herein provided. Such

person shall be kept therein, unless transferred under the previous provisions of this chapter, until restored to his right mind, in which event it shall be the duty of the authorities having the care of such person to notify the sheriff of the county from which he came, who shall order that he appear before the judge of the superior court of the district, to be dealt with according to law. The expense incident to such commitment and removal shall be paid by the county authorities from which such patient was sent.

When a person committed to a State hospital under this section as unable to plead shall have been reported by the hospital to the court having jurisdiction as being mentally able to stand trial and plead, the said patient shall be returned to the court to stand trial as provided in § 122-87. If the hospital authorities feel that an outright discharge or release of said person (in the event he is found not guilty), would be harmful or dangerous to himself or the public at large involved, and that further care and treatment is necessary, said authorities will when reporting that he is able to stand trial and plead, make a request for his return for further care and treatment, in the event he is found not guilty.

If at the trial it is determined that the defendant is not guilty of a criminal offense and it appears to the trial judge that the State hospital in its report has requested that the defendant be returned to said hospital for further care and treatment as an outright discharge or release of said defendant would be harmful or dangerous to himself or the public at large, the trial judge shall commit said defendant to the proper State hospital for care and treatment and shall require him to remain at said hospital until discharged by the superintendent thereof upon the advice of the medical staff."

What is now G.S. 122-84 was adopted in 1905 and appears in the Revisal of 1905. However, some amendments have been made since then, but paragraph one is substantially the same as when adopted in 1905. The Revisal of 1905 came after the prior statute relating to the same subject matter had been declared unconstitutional in *In re Boyett,* 136 N.C. 415, 48 S.E. 789 (1904). In *Boyett* the defendant was charged with murder; he pleaded not guilty and offered evidence tending to show he was

insane at the time of the killing. He was acquitted by the jury. The court immediately and without a hearing ordered him committed to the "Hospital for the Dangerous Insane." The defendant moved for an inquiry as to his mental condition at that time, and the motion was denied. The Supreme Court said:

> "The fatal infirmity in the statute is that the power to commit is vested in the Court to be exercised 'in its discretion.' No provision is made for notifying the person whose liberty is involved, nor is the Court required to make any investigation either by itself, by the examination of witnesses, by calling to its aid medical experts or otherwise. The order of his Honor expressly recites in the language of the act that, 'It is therefore ordered and adjudged by the Court in the exercise of its discretion.' * * * It may be that the wisdom of the Legislature will find, within constitutional limitations, a remedy for the objectionable features of the statute. We do not wish to be understood as saying that a person acquitted of a grave crime upon the ground of insanity may not be detained for a reasonable time, so that by some appropriate proceedings the condition of his mind may, either under the direction of the Judge presiding or some other judicial officer, or commission, be examined into for the purpose of ascertaining whether his own safety and that of other persons, or the public generally, requires that he be committed to the hospital for treatment and care. It is well settled that it is not necessary that a jury trial be had—it is sufficient if the inquiry be had in some way by some tribunal conforming to the constitutional requirement of due process of law. * * *"

When *Boyett* is compared with the provisions of the first paragraph of present G.S. 122-84 and the second and third paragraphs which were added in 1951 are taken into consideration (together with the other amendments since the Revisal of 1905), it appears to us that the proper construction of this statute is that the first sentence of the first paragraph of G.S. 122-84 deals with the authority of the judge to detain a person temporarily until an inquisition can be held and that the remainder of the first paragraph specifically establishes procedures for committing a person *after he has been acquitted* and does not specifically apply to a person accused of crime and found to be without sufficient mental capacity to undertake his defense. The

second and third paragraphs of G.S. 122-84 are concerned, among other things, with procedures for dealing with the person accused of crime and committed under this statute as unable to plead who subsequently becomes mentally able to stand trial and is thereupon acquitted.

[4, 5] When we look at the second sentence in the first paragraph of G.S. 122-84, we see that it begins a new thought which provides procedure for an inquisition to be held by the judge after a person is acquitted of a crime importing serious menace to others. *State v. Craig, supra.* The third sentence in this paragraph refers to witnesses for the "person so acquitted." The next two sentences point to "such inquisition." The remaining sentences in the paragraph all have to do with the inquisition and commitment of the person acquitted. While this portion of paragraph one is suggestive of procedures which are proper to follow in determining whether a person has sufficient mental capacity to undertake his defense, it does not require a finding before commitment thereunder that "the mental condition or disease of such person is such as to render him dangerous either to himself or other persons, and that his confinement for care, treatment, and security demands it." No rules or procedure are provided in G.S. 122-83 or G.S. 122-84 other than "by due course of law" (set out in G.S. 122-83) as to how the judge shall conduct the inquisition when he is called upon to determine whether a person *accused* of crime is unable to plead because of mental illness. However, due process must be observed. *State v. Propst, supra.*

The second paragraph in G.S. 122-84 applies to a person already committed to a State hospital as unable to plead under G.S. 122-84. This second paragraph provides procedures for after-commitment dealings with a person unable to plead as well as in the event such person is later tried and then acquitted.

[6] When the second and third paragraphs of G.S. 122-84 are considered and harmonized with the first paragraph, and also with G.S. 122-83, we are of the opinion and so hold that the provisions of these two statutes are not in irreconcilable conflict.

Under G.S. 122-84, the State and the defendant both contend that before the judge may commit a person thereunder who has been "* * * found by the court to be without sufficient mental capacity to undertake his defense," he must also find that "the mental condition or disease of such person is such as

to render him dangerous either to himself or other persons, and that his confinement for care, treatment and security demands it. * * *"

[7]   The State, however, argues in its brief that the court substantially complied with this when the finding was made that the defendant "is in further need of psychiatric treatment." The State contends that this finding by the court is in effect a shorthand statement that the court finds the defendant in need of further psychiatric treatment because "his mental condition not only renders him incompetent to stand trial, but also is such as to render him dangerous to himself or others, and therefore, his confinement for further treatment is necessary." This interpretation of the findings of the trial judge in this case puts too much strain upon logic. The State asserts that there are two procedures whereby a person accused of crime and found not competent to stand trial may be hospitalized in a State hospital; one is G.S. 122-84 and the other is G.S. 122-91. The State further contends that if the court should find that G.S. 122-84 was not followed, then this case should be remanded with direction that G.S. 122-91 be applied. But on this record it does not appear that the superintendent of the State hospital has reported his findings and recommendations to the clerk of the superior court as required in G.S. 122-91. Absent such notification, the clerk could not institute proceedings under the statute. We hold that the failure to act under the provisions of G.S. 122-91 does not prevent a judge of the superior court from proceeding under the provisions of G.S. 122-84 in proper cases. In the motion filed for the defendant, the judge was requested to proceed under the provisions of G.S. 122-83, G.S. 122-84, and G.S. 122-85.

[2]   Under our statutes G.S. 122-83 and G.S. 122-84, it is not specifically stated that the judge may empanel a jury to try the issue of mental illness, but in *State v. Sullivan, supra,* it was held that the common-law rule applies and that such determination may be made by the court with or without the aid of a jury. See also *State v. Propst, supra,* and *In re Boyett, supra.*

"At common law, * * * the method of determining the defendant's present mental condition rests in the discretion of the trial judge. He may impanel a jury or decide the question himself. * * * [A] few statutes, including the federal, rather clearly intend that the issue shall be tried by the judge without a jury." H. Weihofen, Mental Disorder

as a Criminal Defense, p. 446 (1954). See also *Greenwood v. United States,* 350 U.S. 366, 100 L. Ed. 412, 76 S. Ct. 410 (1956).

[8] It is required before the issuance of a commitment to a State hospital of a person charged with crime of the nature referred to in G.S. 122-84, that the judge or the jury first ascertain by due course of law that such person is "charged with" or "accused of" the commission of such a crime and is without sufficient mental capacity to undertake his defense at the time of arraignment and for that reason cannot be put on trial.

In *State v. David L. Jones,* 278 N.C. 259, 179 S.E. 2d 433 (1971), the Court said:

"If a defendant is capable of understanding the nature and object of the proceedings against him and to conduct his defense in a rational manner, he is sane for the purpose of being tried, though on some other subject his mind may be deranged. This is the common law rule to determine a defendant's capacity to stand trial."

Conversely, if he is incapable of understanding the nature and object of the proceedings against him and to conduct his defense in a rational manner, he is not competent to stand trial. We think that ordinarily it may be presumed that a person charged with a crime of the nature of those set forth in G.S. 122-84 who is without sufficient mental capacity to plead to the bill of indictment and undertake his defense is in need of psychiatric treatment. In this case the court found that the defendant was in need of psychiatric treatment.

[9] In his brief the defendant argues that under the statutes, he cannot be released by the authorities of the hospital unless he becomes competent to stand trial and is ordered by the court to be returned for trial. We do not agree with this interpretation and construction of the judgment and order entered herein or the applicable statutes. See *In re Wilson,* 257 N.C. 593, 126 S.E. 2d 489 (1962); *In re Harris,* 241 N.C. 179, 84 S.E. 2d 808 (1954); and *In re Tew,* 11 N.C. App. 64, 180 S.E. 2d 434 (1971). See also 41 N. C. Law Rev. 141, and 41 N. C. Law Rev. 279.

Defendant also argues that he might never be released "even though the medical authorities of the hospital might consider him safe to return to society, and an unfit candidate for useful or beneficial medical or psychiatric treatment, but nonetheless

incompetent to plead or stand trial." On this record the hospital authorities have made no such findings, and these questions are therefore not presented. We are not called upon to rule thereon. But in *Higgins v. United States,* 205 F. 2d 650 (9th Cir. 1953), it was pointed out that a commitment under the Federal statutes on the ground that an accused is mentally incompetent to stand trial operates to restrain the accused only until he is mentally fit for trial or other disposition is made in the premises.

The defendant here is charged with a felony which is a crime encompassed within the provisions of G.S. 122-84. He was afforded the opportunity to be heard and to prepare for the hearing. The order of the able and experienced trial judge who heard the matter provides that the authorities of the State hospital are not to release the defendant except upon a subsequent order of the superior court "for his return to trial as to the felonious breaking and entering charge or unless otherwise ordered for return to Nash County or elsewhere for hearing." The order entered herein is limited in effect, in that the restraint thereunder is only until the defendant is mentally fit for trial or other disposition made in the premises. *Higgins v. United States, supra.*

In the proceeding we find no error. The judgment and order entered herein by Judge Cohoon is affirmed.

Affirmed.

Judges PARKER and VAUGHN concur.